**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| CONGHUA YAN, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Case No. [4:24-cv-00579-O-BP] |
|  | ) |
| The State of Texas et al, | ) |
|  | ) |
| Defendants. | ) |
| ——————————————————— | ) |

**PLAINTIFF'S BRIEF OF RESPONSE/OBJECTION TO MOTION TO DEFENDANT LORI L. DEANGELIS'S MOTION TO DISMISS WITH MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF CONTENTS                                                                              2

INDEX OF AUTHORITIES                                                                           4

I.    ISSUE PRESENTED                                                                          6

II.   INTRODUCTION                                                                             6

III.  STANDARD OF REVIEW                                                                       6

IV.   SUMMARY OF MOTION TO DISMISS AND RESPONDING ARGUMENTS                                    7

V.    AUTHORITIES                                                                              8

A.    Tex. Fam. Code                                                                           9

B.    Texas Civil Rule of Procedure                                                           9

VI.   ARGUMENT                                                                                10

A.    Texas and Minnesota State Claims                                                        10
   1.   Deangelis does not comply with Rule 12(b).                                            10

B.    Eleventh Amendment, Younger, State proceeding                                           12
   1.   DA Office has no standing to argue official capacity.                                 12
   2.   The doctrine of judicial estoppel precludes a party from arguing inconsistent positions to gain an unfair advantage
   over its adversary.                                                                        13
   3.   *Nesses* reasoning distinguishes disputing state proceeding with federal offense.     15

C.    Article III standing                                                                    15
   1.   This Court must distinguish between the judicial hearing/ruling and ministerial signing.  15
   2.   This case is a typical Fourteen Amendment violation case.                             17
   3.   Deangelis did not dispute Yan's allegation.                                           19

D.    Immunity                                                                                22
   1.   Judicial immunity                                                                     22
   2.   Qualified immunity                                                                    27

E.    Pre-filing injunction.                                                                  29
   1.   Filing suit is a fundamental constitutional right                                     29
   2.   Deangelis failed to meet the threshold                                                29
   3.   This injunction is broad, ambiguous with injurious consequences                       30

F.    Amendment to Original Complaint.                                                        31

1.    Invoke cause of action under 42 U.S.C. § 1985(3)    31

VII.    CONCLUSION    32

VIII.    PRAYER FOR RELIEF    32

CERTIFICATE OF SERVICE    34

# INDEX OF AUTHORITIES

**CASES**

*Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536 (9th Cir. 1991)..................................13

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ..................................28

*Audler v. CBC Innovis Inc.*, 519 F.3d 239 (5th Cir. 2008) ..................................12

*Axon Enter. v. Fed. Trade Comm'n*, 143 S. Ct. 890 (2023) ..................................24

*Bazan ex Rel. Bazan v. Hidalgo County*, 246 F.3d 481 (5th Cir. 2001) ..................................28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................7

*Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1020 (3d Cir. 1991)..................................27

*Bradley v. Fisher*, 80 U.S. 335 (1871) ..................................22

*Browning v. Navarro*, 826 F.2d 335, 344 (5th Cir. 1987) ..................................17

*Bye v. MGM Resorts Int'l*, 49 F.4th 918 (5th Cir. 2022)..................................31

*California Transport v. Trucking Unlimited*, 404 U.S. 508 (1972) ..................................29

*Chalmers v. Lane*, Civil Action No. 3:03-CV-1268-BH (N.D. Tex. Dec. 22, 2003) ..................................7

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) ..................................16

*Concrete Pipe Prods. v. Constr. Laborers Trust*, 508 U.S. 602 (1993)..................................12

*Connecticut v. Doehr*, 501 U.S. 1 (1991) ..................................18

*Dye v. Cowan*, 472 F.2d 1206 (6th Cir. 1972) ..................................23

*Erie R. Co. v. Tompkins*, 304 U.S.64 (1938) ..................................12

*Farguson v. Mbank Houston, N.A.*, 808 F.2d 358 (5th Cir. 1986) ..................................29

*Forrester v. White*, 484 U.S. 219 (1988) ..................................27

*Fuentes v. Shevin*, 407 U.S. 67 (1972) ..................................17

*Gibson v. Goldston*, No. 22-1757 (4th Cir. Oct. 30, 2023)..................................26

*GlobeRanger Corp. v. Software AG U.S., Inc.*, 836 F.3d 477 (5th Cir. 2016) ..................................25

*Harris v. Clay Cnty., Miss.*, 47 F.4th 271 (5th Cir. 2022) ..................................28

*Harris v. Clay Cnty., Miss.*, 47 F.4th 271, 279 (5th Cir. 2022) ..................................28

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009)..................................7

*Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238 (1944)..................................17, 22, 32

*Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991) ..................................11

*Henry v. Cullum Companies Inc.*, 891 S.W.2d 789 (Tex. App. 1995) ..................................16

*Hillsboro News Company v. City of Tampa*, 544 F.2d 860 (5th Cir. 1977) ..................................29

*Hope v. Pelzer* , 536 U.S. 730, 741 (2002) ..................................28

*Housing v. Queen*, No. 14-30512 (5th Cir. Mar. 12, 2015)..................................15

*Howard v. King*, 707 F.2d 215 (5th Cir. 1983)..................................31

*In re D.L.M.*, 982 S.W.2d 146 (Tex. App. 1998) ..................................23

*In re L.D.C.*, NUMBER 13-17-00053-CV (Tex. App. Dec. 13, 2018) ..................................23

*Jones v. Johnson*, 134 F.3d 309 (5th Cir. 1998) ..................................23

*Kelliher v. Stone Webster*, 75 F.2d 331 (5th Cir. 1935) ..................................31

*Life and Fire Ins. Company of New York v. Wilson's Heirs*, 33 U.S. 291, (1834) ..................................16

*Lucas v. U.S.*, 757 S.W.2d 687 (Tex. 1988) ..................................11

*Marbury v. Madison*, 5 U.S. 137 (1803) ..................................29

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ..................................19

*McLellan v. Mississippi Power Light Co.*, 545 F.2d 919 (5th Cir. 1977) ..................................31

*Mireles v. Waco*, 502 U.S. 9 (1991)..................................22

*Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974) ..................................18

*Moore v. Allstate Tex. Lloyd's*, No. 17-10904 (5th Cir. Jul. 19, 2018) ..................................7

*Musser Davis Land Co. v. Union Pacific Resources*, 201 F.3d 561 (5th Cir. 2000)..................................11

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ..................................15

*Northern Pipeline v. Marathon Pipeline*, 458 U.S. 50 (1982) ..................................24

*Olivares v. Martin*, 555 F.2d 1192 (5th Cir. 1977)..................................................................29
*Priester v. Lowndes County*, 354 F.3d 414 (5th Cir. 2004) ........................................................7
*Ricard v. Williams*, 20 U.S. 59 (1822)....................................................................................12
*Rockett v. Eighmy*, 71 F.4th 665 (8th Cir. 2023) ....................................................................26
*Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th Cir. 2016) ............................................24
*Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793 (5th Cir. Jun. 20, 2018) ......................7
*Smart v. England*, 93 F.4th 1283 (11th Cir. 2024)..................................................................28
*Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969) ..........................................................18
*Stump v. Sparkman*, 435 U.S. 349 (1978) ..............................................................................22
*Taylor v. Riojas*, 141 S. Ct. 52, (2020) ..................................................................................28
*Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022) ......................................................................24
*Texas v. United States*, 945 F.3d 355 (5th Cir. 2019) ..............................................................22
*Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013) ....................................................15
*United States v. Dees*, 125 F.3d 261 (5th Cir. 1997) ..............................................................24
*United States v. Pryor*, No. 13-60529 (5th Cir. 2014) ............................................................12
*Vetri Ventures, LLC v. Westridge Eagles Nest Owners Ass'n*, No. 05-21-01172-CV (Tex. App. Mar. 15, 2024) ......23
*Villarreal v. City of Laredo*, 17 F.4th 532, (5th Cir. 2021) ......................................................28
*Woodfox v. Cain*, 609 F.3d 774 (5th Cir. 2010) ..................................................................7, 11
*Wright v. El Paso County Jail*, 642 F.2d 134 (5th Cir. 1981) ..................................................31

**STATUTES**

RULE 21. FILING AND SERVING PLEADINGS AND MOTIONS..................................................9
RULE 21a. METHODS OF SERVICE..........................................................................................10
RULE 305. PROPOSED JUDGMENT..........................................................................................10
Tex. Fam. Code Ann. § 201.007 ..............................................................................................23
Tex. Fam. Code Ann. § 201.313 ................................................................................................9
Tex. Fam. Code Ann. § 201.317 ................................................................................................9
Tex. Fam. Code Ann. § 6.501 ....................................................................................................9
Tex. Fam. Code Ann. § 82.001 ..................................................................................................9
Tex. Fam. Code Ann. § 82.042 ..................................................................................................9
Tex. Fam. Code Ann. § 82.043 ..................................................................................................9

TO THE HONORABLE JUDGE REED C. O'CONNOR:

Come Now, Plaintiff Conghua Yan (hereinafter "Yan", "Plaintiff") respectfully submits this brief of objection and response to the Defendant, Lori L. DeAngelis's Motion to Dismiss. The Motion lacks merit under Fed. R. Civ. P. 12 and common law. Plaintiff requests this Court deny the Motion and allow the case to proceed for the reasons set forth below:

## I.    Issue Presented

1.    Are state actors immune from liability for depriving of core rights through deception, knowing that no petition was filed or grievance presented to the government.

2.    Whether Fourteen Amendment and *Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238 (1944) controls this case.

## II.    Introduction

3.    On October 10, 2024, Yan filed a Second Amended Complaint against Defendant DeAngelis (hereinafter referred to as "Lori" or "DeAngelis" or "Defendant") in this case. DeAngelis is being sued pursuant to a federal cause of action *§ 1983* claim (Second Claim for Relief) and various state causes of actions (Third, Fourth and Sixth Claims for Relief).

4.    DeAngelis filed Motion to Dismiss (Dkt.29-30) on December 13.

5.    In Yan's second amended complaint (Dkt. 9), following four claims applied to Defendant:

- Second Claim for Relief, *§ 1983* (Individual and Official capacity)

- Third Claim for Relief, Texas civil cause of fraud (Individual)

- Fourth Claim for Relief, Texas civil cause of conspiracy (Individual)

- Sixth Claim for Relief, Minnesota common law fraud (Individual)

## III.    Standard of Review

6.    ""Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations,") … (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely.") … "[A] plaintiff "receives the benefit of imagination, so long as

the hypotheses are consistent with the complaint."" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 563 (2007).

7.    "A motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." … The complaint is liberally construed in the plaintiff's favor, and all well-pleaded facts in the complaint are taken as true. … The determining issue is not whether the plaintiff will ultimately prevail on the merits, but whether he is entitled to offer evidence to support his claim. … Therefore, this court will not dismiss a plaintiff's claim, "unless the plaintiff will not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in his complaint."" *Priester v. Lowndes County*, 354 F.3d 414, 418-19 (5th Cir. 2004).

8.    "[A] court "must examine the complaint to determine if the allegations provide for relief on any possible theory." … "So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it fails to categorize correctly the legal theory giving rise to the claim."" *Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793, 13 n.7 (5th Cir. Jun. 20, 2018).

9.    ""A motion to dismiss may be granted only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." "We construe all of the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint."" *Moore v. Allstate Tex. Lloyd's*, No. 17-10904, 3 (5th Cir. Jul. 19, 2018).

10.    "Even after Twombly, though, we remain obligated to construe a pro se complaint liberally. See Erickson v. Pardus." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

11.    "[W]here a plaintiff proceeds pro se, the [North District] court is further guided by the general rule that allegations in a pro se complaint are construed more permissively." *Chalmers v. Lane, Civil Action No. 3:03-CV-1268-BH*, 9 (N.D. Tex. Dec. 22, 2003).

12.    "Although we liberally construe pro se pleadings, we do not afford such latitude to pleadings prepared by counsel." *Woodfox v. Cain*, 609 F.3d 774, 792 (5th Cir. 2010).

### IV.    Summary of Motion to Dismiss and Responding Arguments

13.    In the Motion to Dismiss, Deangelis' counsel seeks dismissal under FRCP *12(b)(1)* and FRCP *12(b)(6)* dismissal for following reasons:

    A. Lacks standing FRCP *12(b)(1)*

        1.    No Article III standing.

        2. *Younger* abstain.

   B. Abstention FRCP *12(b)(6)*

        1. Judicial immunity bars claim against associate judge.

        2. Eleventh Amendment bars official capacity.

        3. Insufficient claim under *§ 1983* and Qualified immunity bars individual capacity.

   C. Pre-filing injunction

14.    Plaintiff will rebut Defendant's argument in following order:

   A. Texas and Minnesota State Claims

        1. Deangelis does not comply with Rule 12(b).

   B. Eleventh Amendment, *Younger*, State proceeding

        1. DA office has no standing to argue official capacity.

        2. The doctrine of judicial estoppel precludes a party from arguing inconsistent positions to gain an unfair advantage over its adversary.

        3. Nessess reasoning distinguishes disputing state proceeding with federal offence.

   C. Article III standing

        1. This Court must distinguish between the judicial hearing/ruling with ministerial signing.

        2. This case is a typical Fourteen Amendment violation case.

        3. Deangelis did not dispute Yan's allegation.

   D. Immunity

        1. Judicial Immunity

        2. Qualified Immunity

   E. Pre-filing Injunction

   F. Amendment to Original Complaint

## V.    Authorities

### A. Tex. Fam. Code

TITLE 1. THE MARRIAGE RELATIONSHIP

Sec 6.501 - Temporary Restraining Order

(b) A temporary restraining order under this subchapter may **not** include a provision:

**(2)** that: (A) **excludes a spouse from occupancy of the residence** where that spouse is living except as provided in a protective order made in accordance with **Title 4**;

TITLE 4. PROTECTIVE ORDERS AND FAMILY VIOLENCE:

Sec. 82.001. APPLICATION. **A proceeding** under this subtitle is **begun by filing** "An Application for a Protective Order" with the clerk of the court.

Sec. 82.042. ISSUANCE OF NOTICE OF APPLICATION. (a) On the filing of an application, the clerk of the court **shall issue a notice** of an application for a protective order and deliver the notice as directed by the applicant.

Sec. 82.043. SERVICE OF NOTICE OF APPLICATION. (a) Each respondent to an application for a protective order **is entitled to service of notice** of an application for a protective order.

Sec. 201.313. REPORT.

(a) The associate judge's report may contain the associate judge's findings, conclusions, or recommendations and may be in the form of a proposed order. **The associate judge's report must be in writing and in the form directed by the referring court.**

(b) **After a hearing, the associate judge shall provide the parties participating in the hearing notice of the substance of the associate judge's report, including any proposed order**.

(c) Notice may be given to the parties:

(1) in open court, by an oral statement or by providing a copy of the associate judge's written report, including any proposed order;

(2) by certified mail, return receipt requested; or

(3) by facsimile.

…

(e) **After a hearing conducted by an associate judge**, the associate judge **shall send the associate judge's signed and dated report**, including any proposed order, and all other papers relating to the case **to the referring court**.

Sec. 201.317. DE NOVO HEARING.

(a) A party may request a de novo hearing before the referring court by filing with the clerk of the referring court a written request not later than the third working day after the date the party receives **notice of the substance of the associate judge's report** as provided by Section 201.313.

### B. Texas Civil Rule of Procedure

RULE 21. FILING AND SERVING PLEADINGS AND MOTIONS

(a) Filing and Service Required. **Every** pleading, plea, motion, or application to the court for an order, whether in the form of a motion, plea, or other form of request, unless presented during a hearing or trial, **must be filed** with the clerk of the court in writing, must state the grounds therefor, must set forth the relief or order sought, and at the same time a true copy must be served on all other parties, and must be noted on the docket.
…

(f) Electronic Filing.

(1) Requirement. Except in juvenile cases under Title 3 of the Family Code and truancy cases under Title 3A of the Family Code, **attorneys must electronically file documents in courts where electronic filing has been mandated**. Attorneys practicing in courts where electronic filing is available but not mandated and unrepresented parties may electronically file documents, but it is not required.
…

Comment to 2013 Change: Rule 21 is revised to incorporate rules for electronic filing, in accordance with the Supreme Court's order - Misc. Docket No. 12-9206, amended by Misc. Docket Nos. 13-9092 and 13-9164 - **mandating electronic filing in civil cases beginning on January 1, 2014. The mandate will be implemented according to the schedule in the order and will be completed by July 1, 2016**. The revisions reflect the fact that the mandate will only apply to a subset of Texas courts until that date.

## RULE 21a. METHODS OF SERVICE

(a) **Methods of Service**. **Every notice required by these rules**, and every pleading, plea, motion, or other form of request required to be served under Rule 21, other than the citation to be served upon the filing of a cause of action and except as otherwise expressly provided in these rules, may be served by delivering a copy to the party to be served, or the party's duly authorized agent or attorney of record in the manner specified below:

(1) **A document filed electronically** under Rule 21 **must be served electronically through the electronic filing manager** if the email address of the party or attorney to be served is on file with the electronic filing manager. If the email address of the party or attorney to be served is not on file with the electronic filing manager, the document may be served on that party or attorney under subparagraph (2).

(2) Documents Not Filed Electronically. A document not filed electronically may be served in person, by mail, by commercial delivery service, by fax, by email, or by such other manner as the court in its discretion may direct.

## RULE 305. PROPOSED JUDGMENT

Any party may prepare and *submit a proposed judgment to the court for signature. Each party who submits a proposed judgment for signature* **shall serve** the proposed judgment on all other parties to the suit who have appeared and remain in the case, in accordance with *Rule 21a*.

## VI.    Argument

**A. Texas and Minnesota State Claims**

**1.  Deangelis does not comply with Rule 12(b).**

15.     *Fed. R. Civ. P. 12* allows a defendant party to assert *12(b)(1)* or *12(b)(6)* defenses by a motion, but the defendant needs to make every [*12(b)(1)* and/or *12(b)(6)*] defense to a claim (emphasis added). Deangelis pleaded her defenses in a hybrid form without specifying each claim. Since Deangelis is not sued under every claim in Yan's complaint, it is neither Yan's nor this Court's duty to guess which defense applies to which claim. This Court surely does not play advocacy role to retrofit Deangelis' [*12(b)(1)* and/or *12(b)(6)*] defense to suit one of the six claims.

16.     The Fifth Circuit precedent says that courts do not afford liberally construe latitude to pleadings prepared by counsel. See *Woodfox v. Cain*, 609 F.3d 774, 792 (5th Cir. 2010). This Court should deny Deanglies' motion due to failure to comply with Rule 12(b) and undeveloped defense.

17.     Alternatively, Deangelis was sued under one federal *§ 1983* claim, two Texas state claims and another Minnesota state claim. "To determine a state law question, we first look to decisions of the [State] Supreme Court. … If the [State] Supreme Court has **not** spoken on the issue, it is our duty to determine as best we can what that court would decide." *Musser Davis Land Co. v. Union Pacific Resources*, 201 F.3d 561, 563-64 (5th Cir. 2000).

18.     The Supreme Court of Texas has "explained the importance and uniqueness of state constitutional rights":

> "[S]tate constitutions can and often do provide **additional rights** for their citizens. The **federal constitution sets the floor** for individual rights; **state constitutions establish the ceiling**. Recently, state courts have not hesitated to **look to their own constitutions to protect individual rights**. This court has been in the mainstream of that movement.
>
> Like the citizens of other states, Texans have adopted state constitutions to restrict governmental power and guarantee individual rights. The powers restricted and the individual rights guaranteed in the present constitution reflect Texas' values, customs, and traditions. Our constitution has independent vitality, and this court has the power and duty to protect the **additional state guaranteed rights** of all Texans. By enforcing our constitution, we provide Texans with their full individual rights and strengthen federalism." (emphasis added) *Lucas v. U.S.*, 757 S.W.2d 687, 692 (Tex. 1988).

19.     Another highest court of Texas stated, "[a]ttorneys, when briefing … questions, should carefully separate federal and state issues into **separate** grounds and provide substantive analysis or argument on **each separate** ground. If sufficient distinction between federal and state … grounds is **not** provided by counsel, this Court may **overrule** the ground as multifarious. … (appellate courts may require supplemental briefs if state … issue **not** sufficiently developed)." *Heitman v. State*, 815 S.W.2d 681, 690 n.23 (Tex. Crim. App. 1991).

20.    DeAngelis' motion erred by mainly relying on this Court's non-controlling rulings and Fifth Circuit's precedents to defend all claims collectively, without distinguishing between federal and state claims. Her motion failed to cite any controlling precedents from the state supreme court to address two Texas state claims and one Minnesota claim. Given the additional and heightened protections provided by state constitutions, federal common-law precedent holds no authoritative effect in addressing state law fraud and conspiracy claims.

21.    "There is no federal general common law." *Erie R. Co. v. Tompkins*, 304 U.S.64 (1938). Either state legislature or "Congress has no power to declare substantive rules of federal common law applicable in a state." *Id*. "[I]n a diversity case a federal court must apply the substantive law of the state while following federal procedural rules."" *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008).

22.    Without providing substantive analysis or arguments for each specific ground, the arguments concerning the two Texas claims are inadequately briefed and undeveloped, and cannot be dismissed solely on the basis of federal common-law precedent. The same logic applies to the Minnesota state claim.

23.    "[D]ue process requires a 'neutral and detached judge in the first instance.'" *Concrete Pipe Prods. v. Constr. Laborers Trust*, 508 U.S. 602, 617 (1993). "The principles of justice would seem to require, that the law should administer its benefits to those who are vigilant in exercising their rights, and not to those who sleep over them." *Ricard v. Williams*, 20 U.S. 59, 116 (1822). "A counseled brief is not entitled to liberal construction." *United States v. Pryor*, No. 13-60529, 2 (5th Cir. 2014). This Court's liberal construction of DeAngelis' argument to fit one of the six claims based on the best legal theory would prejudice Yan. Yan requests this Court to deny the motion to dismiss against state claims entirely at this stage due to insufficient briefing.

24.    Alternatively, in the absence of specifying which claim DeAngelis' defense addresses, pro se litigant Yan will proceed to rebut al claims, relying on the good-faith assumption and benefiting from liberal construction.

### B.  Eleventh Amendment, Younger, State proceeding
#### 1.  DA Office has no standing to argue official capacity.

25.    Yan served summons on Lori L. DeAngelis under individual capacity for the Second, Third, Fourth, and Sixth Claims and served the State of Texas under official capacity for the Second Claim for Relief.

26.      The Office of the Attorney General appeared on behalf of the State of Texas under official capacity. Few weeks later, the Tarrant County Criminal District Attorney's Office voluntarily appeared as counsel for DeAngelis under individual capacity. The Tarrant County Criminal District Attorney's Office has not established an attorney-client relationship to represent DeAngelis under official capacity.

27.      *Fed. R. Civ. P. 12(b)* says, "Every defense to a claim for relief in any pleading must be asserted… But a party may assert the following defenses by motion." Motion is a singular. *Fed. R. Civ. P.* does not permit a party sued in its official capacity to file successive Rule 12 motions through multiple counsel.

28.      The State of Texas argued Eleventh Amendment and *Younger* concerning official capacity claim on November 6, Yan responded on November 25 and the State of Texas replied on December 6. This Court should treat this claim <u>were</u> fully briefed.

29.      Deangelis raised the same arguments regarding the same official capacity claim on December 13. In a suit involving multiple parties and multiple claims, if a court allows every defendant to argue the same claim repeatedly at different time, the plaintiff will be prejudiced.

30.      Therefore, Yan contests DeAngelis' counsel's argument concerning official capacity. This Court should deny these issues.

### 2.  The doctrine of judicial estoppel precludes a party from arguing inconsistent positions to gain an unfair advantage over its adversary[1].

31.      Deangelis' motion at page 6, falsely stated that "the state proceedings provide an adequate opportunity to litigate the plaintiff's federal constitutional claims."

32.      In March 2024, Yan filed a motion in the state district court seeking to void the unlawful TRO. Yan argued that the signature on the TRO was forged and that no petition had been filed to support it. Despite these arguments, the district court judge **Cynthia Terry** denied the motion, asserting that **in her own court she lacked jurisdiction** to revoke a 2022 decision issued, regardless of its merits. In April 2024, Yan filed a habeas corpus petition to collateral challenge his restrained liberty, but the district court refused to assign a cause number. Yan subsequently filed a mandamus petition to compel the district court to assign a cause number, so he could at least have access to judicial review. However, neither the Second Court of Appeals nor the Supreme Court of Texas granted the mandamus.

---

[1] *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 540 (9th Cir. 1991).

33.     Currently, Yan has a Petition for a writ of certiorari[2] pending in the Supreme Court of the United States, addressing the Suspension Clause under Article I regarding the privilege of habeas corpus. The writ seeks a remedy to ensure ministerial judicial access to habeas corpus, rather than addressing the merits of the challenged state action. (The procedural history described above can be found in the writ of certiorari).

34.     This Court should invoke judicial estoppel, to deny the "state proceeding adequate opportunity" argument:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." … This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." … ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding") ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

> Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is "**to protect the integrity of the judicial process**," … "prohibiting parties from deliberately changing positions according to the exigencies of the moment," … ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); (judicial estoppel "protect[s] the **essential integrity** of the judicial process"); … (judicial estoppel prevents parties from "playing `fast and loose with the courts'"… Because the rule is intended to prevent "improper use of judicial machinery," … judicial estoppel "is an equitable doctrine invoked by a court at its discretion,"

> Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," … Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: **First, a party's later position must be "clearly inconsistent" with its earlier position**. … Second, courts regularly inquire whether **the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled**," … Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations,"… and thus poses little threat to judicial integrity. … A third consideration is **whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.** …(judicial estoppel forbids use of "intentional self-contradiction . . . as

---

[2] https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/24-554.html.

a means of obtaining unfair advantage")" *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001).

35.     The state district court judge, **Cynthia Terry**, initially stated that her own court **did not have jurisdiction** to conduct judicial review of the unlawful TRO issued in her own case. Later, she denied judicial access to habeas corpus, which Yan attempted to use to collaterally attack the TRO. Now, **Lori Deangelis** has taken an inconsistent position, asserting that "the state proceedings provide an adequate opportunity to litigate the plaintiff's federal constitutional claims" in an effort to persuade this Court to dismiss the case, thereby imposing an unfair detriment. Her statement creates the perception that either the first or the second court was misled.

36.     Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process and to protect its essential integrity. **Lori Deangelis** and **Cynthia Terry** improperly use judicial machinery, playing fast and loose with the courts, and demonstrating a lack of integrity.

37.     Someone who has worked in Tarrant County family courthouse for decades reportedly said, "**You won't find one single honest person in this building.**" This statement rings true, as misconduct has been caught red-handed. Yan cannot find essential integrity from the "state proceeding adequate opportunity" argument. It is almost impossible to a layperson to recover remedy when judge lies.

### 3.  *Nesses* reasoning distinguishes disputing state proceeding with federal offense.

38.     Family court proceedings are not a paradise for federal white-collar crime. The Fifth Circuit adopted *Nesses* reasoning from *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995) in *Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013). *Truong* reaffirms a federal remedy where state proceedings are corrupted to facilitate a federal offense. It has been cited hundreds of times, reinforcing the principle that claims under federal civil causes of action and those disputing a state judgment are distinct. See also *Housing v. Queen*, No. 14-30512 (5th Cir. Mar. 12, 2015). To ensure justice, this Court should have applied *Nesses* reasoning to distinguish the premise of Yan's suit with state proceeding.

### C. Article III standing

#### 1.  This Court must distinguish between the judicial hearing/ruling and ministerial signing.

39.     "The Young[3] exception is a legal fiction that allows private parties to bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." … For the exception to apply, the state official, "by virtue of his office," must have "**some connection with**

---

[3] *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908).

**the enforcement** of the [challenged] act"…The Supreme Court's recent Ex parte Young jurisprudence explains that … "a court need **only** conduct a 'straightforward inquiry into **whether** [the] complaint alleges an ongoing violation of federal law and **seeks relief properly characterized as prospective**.' "" *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019).

40.    Yan's complaint, at page 16, properly seeks declaratory and injunctive relief against several state acts continuing in the Tarrant County Family court in violation of due process.

41.    Yan's complaint, at ¶¶ 2-4, 8, 54-59, alleges that DeAngelis' signing act is *ultra vires*, violates procedural due process, and lacks all jurisdiction. The enforcement of the TRO deprived Yan of the liberty to live in his own marital home and subsequently led to the issuance of a writ of garnishment, withholding Yan's wage. These are concrete harm sufficient to establish Article III standing.

42.    At ¶¶ 56-57, 59-60, Yan alleged that the income garnishment injury involves repeated garnishment of income every two weeks since June 2022. As a matter of fact, Yan alleged his injury has occurred 26 times annually since June 2022.

43.    Deangelis' motion at page 5, falsely stated that "[p]laintiff's underlying dispute concerning the payment of the temporary orders and writ of garnishment in connection with his ongoing divorce proceeding does not lie against the judges hearing or ruling on his case." Yan did not allege against the **hearing** or **ruling** which does not exist. Yan's complaint at ¶¶ 56-59, alleged Deanglies signed the TRO **without "**a hearing or ruling **in the open court"** in the absence of both parties being presented.

44.    This Court must look at Texas law to determine the judicial act in associate judge courts:

> "The **rendition** of the trial court's decision, whether **in open court** or by **official document of the court**, is the critical moment when the judgment becomes effective. The subsequent **reduction of the rendered judgment to writing** is typically carried out by **the party favored by the judgment**. The **signature** of the trial court **upon the writing** is merely a **ministerial** act of the court **conforming** to the provision of **Rule 306a(2)** of the Texas Rules of Civil Procedure which calls for "all judgments, decisions and orders of any kind to be reduced to writing and signed by the trial judge with the date of signing stated therein." The trial judge's **signature** upon the **written judgment** does **not** affect or change the date of the **rendition** of the judgment." *Henry v. Cullum Companies Inc.*, 891 S.W.2d 789, 792 (Tex. App. 1995).

45.    The Supreme Court's controlling precedent had same view, "The act of signing the judgment is a **ministerial** and not a judicial act." *Life and Fire Ins. Company of New York v. Wilson's Heirs*, 33 U.S. 291, (1834).

46.    "The Supreme Court, however, noting that the attorneys had urged the **falsified** article upon the court and had **prevailed**, held that they "are in **no** position now to dispute its **effectiveness**."" *Browning v. Navarro*, 826 F.2d 335, 344 (5th Cir. 1987) (citing *Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238 (1944)).

47.    Deangelis signed on a falsified TRO on June 21, 2022, knowing there was no rendition of the judgement for the petition of TRO. For this instance, on June 21, 2022, there was no judgment, decision and order of any kind existed to be reduced to writing for a proposed order.

48.    Yan's allegation is clear at ¶54, on June 21, 2022, Barrows brought a **falsified** TRO to the court**,** knowing there is no petition filed to the court, no hearing, no notice of hearing. Deangelis signed it. Barrows brought this signed TRO to the clerk in person and enter the TRO to the docket record. They intentionally avoid Texas Supreme Court ordered **Mandated Electronic Filing** required under Tex. R. Civ. P. 21 and 21a since **2013**. See Appendix A at page 3-4 (The Supreme Court of Texas order 13-9164 "attorneys must e-file **all** documents in civil cases"). Because attorneys and judges circumvented the **Mandated Electronic Filing**, so this signed TRO was never served to Yan or any party. The submitted TRO in Deangelis' motion evidently showing there was no electronic filing timestamp**.** Yan did not know its existence until March 2024.

### 2.    This case is a typical Fourteen Amendment violation case.

49.    "The requirement of notice and an opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions. … fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972).

50.    "[I]t is now well settled that a temporary, nonfinal deprivation of property is nonetheless a "deprivation" in the terms of the Fourteenth Amendment. …[T]he Court firmly held that these were deprivations of property that had to be preceded by a fair hearing." *Fuentes* at 84-85.

51.    "The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause. While the length and consequent severity of a deprivation may be another factor to weigh in determining the appropriate form of hearing, it is not decisive of the basic right to a prior hearing of some kind." *Fuentes* at 86.

52.    Yan was deprived of such an interest in continued possession and use of his home. Clearly, Yan's possessory interest was sufficient to invoke the protection of the Due Process Clause. See *Fuentes* at 86-87.

53.    "Due process of law guarantees "no particular form of procedure; it protects substantial rights." … "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."" *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610 (1974). The prejudgment garnishment of wages is "a specialized type of property presenting distinct problems in our economic system. [A]nd because "prejudgment garnishment … may as a practical matter drive a wage-earning family to the wall," it was held that the Due Process Clause forbade such garnishment absent notice and prior hearing." *Id at 614*.

54.    Yan was also compelled to make substantial mortgage payments for a home he cannot enjoy. Unable to afford both wage garnishment and mortgage payments, his personal property suffered irreparable damage, accumulated debts. The Supreme Court also held, the partial impairments to property rights affect merit due process protection. Several consequences can be severe, such as the default of a homeowner's mortgage. See *Connecticut v. Doehr*, 501 U.S. 1, 19 (1991). "The extent of these harms, moreover, grows with the length of the suit." *Id* at 22. The Court noted, upon analysis, the deprivation here is a significant one, for a property owner, it can even place an existing mortgage in default. *Id* at 27-28.

55.    "A prejudgment garnishment … is a taking which may impose tremendous hardship on wage earners with families to support. … Over and beyond that was the great drain on family income. "The idea of wage garnishment in advance of judgment … or whatever it is called is a most inhuman doctrine. It compels the wage earner, trying to keep his family together, to be driven below the poverty level."" *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 340 (1969).

56.    Without a notice and a hearing, the State of Texas garnished Yan's wages before they even reached his pocket. After all these garnishments, leaving Yan with less than 20% of his net income while still being taxed on 100% of his income. He was left with only one thousand dollars an few hundred per month, insufficient to sustain a substantive living, in a Biden inflation where average rent is above $2000. Yan's alleged injury is clear at ¶67. He was sunk under insurmountable debt, with no other choice, as he could neither default on the mortgage and making his child homeless—nor risk criminal contempt of the TRO, which could result in being jailed and subsequently destroying his banking career.

57.    The most ironic joke of the Tarrant County family court was that, three years later, the Tarrant County Family Court Services drafted a child custody evaluation report disparaging that Yan's living conditions do not satisfy their view for child custody, compared to Fuyan Wang's. This conclusion comes after they staged Yan into poverty under this TRO while requiring him to pay for Fuyan Wang's

residence during the time of evaluation and Fuyan Wang keeps all her massage cash income laundered every month.

58.     All of this happened to Yan under lawyers forged signature and a TRO signed by DeAngelis, without an actual petition, a hearing, or even a serve process.

59.     As recognized in *Sniadach*, the leverage on the wage earner is enormous. Throughout 2021 and 2022, Barrows not only imposed garnishment but also demanded the full payment of attorney fees in the state court proceedings. The hardship was created for one conspiracy purpose: to aid Fuyan Wang in concealing her money laundering activities, involving a cash pool of more than $100,000.

60.     Instead of reverse the wrongdoing, Barrows conspired with Pigg to compel Yan to accept a divorce settlement conditioned on waiving Fuyan Wang's financial discovery obligations. When Yan refused, Pigg withdrew within 24 hours. Pigg thought Yan, a first-generation immigrant and a layperson who has no US degree, would never have any chance to expose Fuyan Wang's money laundering scheme. He was so wrong.

61.     Yan learned a Tarrant County family court common-law doctrine in hard way; Tarrant County family court operates as a business focused on collecting attorney fees; it is not designed to hold wrongdoers accountable, and neither judges nor lawyers appear genuinely interested in seeking justice. Anyone disobey will be punished. Tarrant County family court judge and lawyers have destroyed Yan's life entirely, driving him to the edge of bankrupt, because his goal of exposing RICO crime does not meet Tarrant County family court's commercial narrative.

62.     "Section 1 of the Fourteenth Amendment decrees that no State shall "deprive any person of life, liberty, or property, without due process of law."" *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Since 2022, Yan had lost "the enjoyment of life, liberty, and property." *McDonald at* 861-862.

63.     Three years ago, Yan was a man with no debt and a flawless payment history. Three years later, the Tarrant County family court has left him with nothing to lose, buried deeply under debt. However, after paying this huge financial toll, Yan stands firm in this court, holding substantial evidence to support his $100,000 money laundering cash allegation and fully expects more perjury to be committed in this suit—a common tactic in Tarrant County family courts.

64.     Yan has a federal statutory cause of action under *§ 1983* to sue DeAngelis, Barrows and Pigg for the violation of Fourteen Amendment.

### 3.  Deangelis did not dispute Yan's allegation.

65.    If there had been a notice of the TRO hearing or a petition for the TRO, DeAngelis would have submitted an electronic filing stamped copy. But there was none. She did not provide any certified court docket entry record to show that a hearing took place—because none existed. Nor did she provide any electronic filing stamped copy of associate judge's report as required by *Tex. Fam. Code § 201.313*—because none existed. The June 21 TRO is the product of a <u>Civil Lynch Mob</u> and has nothing to do with due process of law, complying with neither Texas nor federal due process requirements.

66.    Although the falsified June 21 TRO includes language indicating that a hearing had occurred, Deangelis' motion did not state that Deangelis actually had conducted such a hearing and she actually made a ruling in the open court. All she presented was a copy of the TRO with her signature, but without an electronic filing stamp. The district clerk's stamp in the top right corner appeared hand-pressed, indicating it was entered through in person submission.



67.    District clerk does not serve any paper they received. They enter the document for record keeping purpose. Barrows acquired this signed TRO to obtain wage garnishment. Yan never received the signed copy since June 2022 until March 2024 when he becomes a pro se in the state court.

68.    Contradictorily, all electronically filed documents to Tarrant County District Clerk office, carry a standard system-generated district clerk stamp, as shown below.



69.    Deangelis knew this was a federal court, where perjury might have consequences. Unlike Tarrant County family court, where the Tarrant County DA has been abusing discretion to escort family court lawyers and judges to lie repeatedly, such actions may not go unchecked in this Court.

70.    Yan alleged legally cognizable injury at ¶¶66-70. "[B]eing required to buy something that you otherwise would not want is clearly within the scope of what counts as a "legally cognizable injury." "Economic injury" of this sort is "a quintessential injury upon which to base standing."" Yan has to "spent "additional funds" to comply with the unlawful TRO. "Causation and redressability "flow naturally" from this concrete, particularized injury." *Texas v. United States*, 945 F.3d 355, 380-381 (5th Cir. 2019).

71.    The Supreme Court held:

> "Furthermore, tampering with the administration of justice in the manner indisputably shown here involves **far more than an injury to a single litigant**. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The **public welfare** demands that **the agencies of public justice** be not so impotent that they **must always be mute and helpless victims of deception and fraud**." *Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238, 246 (1944).

**D.    Immunity**

1.    **Judicial immunity**

1)    Statutory judge does not have the absolute judicial immunity as Article III judges does

72.    Federal common-law judicial immunity applies only to Article III judges of *general jurisdiction*, not for Article I statutory judge.

73.    Federal common-law judicial immunity is established under three controlling Supreme Court precedents: *Bradley v. Fisher*, 80 U.S. 335 (1871); *Stump v. Sparkman*, 435 U.S. 349 (1978); and *Mireles v. Waco*, 502 U.S. 9 (1991). A statutory judge is not automatically immune simply because she/he performs any judicial act. *Bradley* at 352 expressly emphasized that a statutory judge is not immune for *ultra vires* act. The Supreme Court held:

> "Judges of courts of record of **superior or general jurisdiction** are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley* at 336.

> "Thus, if a **probate court**, invested **only** with **authority** over wills and the **settlement** of estates of deceased persons, should proceed to try **parties** for **public offences**, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford **no protection** to him in the exercise of the **usurped authority**." *Brandley* at 352.

"For that reason the Court held that "judges of courts of **superior or general jurisdiction** are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."" *Stump* at 3455-3456.

"A long line of this Court's precedents acknowledges that, generally, **a judge is immune** from a suit for money damages. *See, e.g.*, … *Stump v. Sparkman*… *Bradley v. Fisher* …" (citations omitted) *Mireles*.

74.     An appellate court judge possesses <u>superior jurisdiction</u>, and an Article III district court judge has <u>general jurisdiction</u>, also known as <u>constitutional jurisdiction</u>. *Bradley* and *Stump* established the doctrine of absolute immunity for judges possessing these jurisdictions. *Mireles* extended this immunity to state Article III constitutional judges, ruling that "Mireles", a California state Article III constitutional judge, had the same federal common-law judicial immunity.

75.     *Tex. Fam. Code Ann..§ 201.007* clearly defined the rendition "Powers of Associate Judge" as: Except as limited by an order of referral, an associate judge may (14) without prejudice to the right to a de novo hearing before the referring court under Section 201.015…"

76.     Texas common law distinguishes statutory judge and constitutional judge:

"In Texas, **all** trials are conducted before **judges**. TEX. CONST. art. V, § 1. The Texas Constitution doe**s not** vest masters, referees, or **associate judges with the authority to act as judges**. **Only** when a statute **permits** a litigant to waive his or her **constitutional right** to trial before a judge, may a person who is not a judge adjudicate the merits of the case." *In re D.L.M., 982 S.W.2d 146* (Tex. App. 1998).

"However, the right to a trial **de novo before an elected judge** was **designed to conform the proceedings to the constitutional grant of powers to the judiciary**. … Associate judges **are creatures of statute** and **are not vested with the authority to render** a final order **under the Texas Constitution**." *In re L.D.C.*, NUMBER 13-17-00053-CV, 13 (Tex. App. Dec. 13, 2018).

"**When a judge has no authority to render an order or judgment, that order or judgment is void**." *Vetri Ventures, LLC v. Westridge Eagles Nest Owners Ass'n*, No. 05-21-01172-CV, 6 (Tex. App. Mar. 15, 2024).

77.     Federal common law distinguishes statutory judge and constitutional judge as well. A federal magistrate's order could be *ultra vires* and *void* because a magistrate is not an Article III judge, *Jones v. Johnson*, 134 F.3d 309, 310 (5th Cir. 1998) (citing *Dye v. Cowan*, 472 F.2d 1206, 1207 n. 1 (6th Cir. 1972)). If a magistrate issues orders exceeding the scope of functions delineated by the Federal Magistrates Act, those actions are beyond their scope of authority. Judicial decisions involving duties inconsistent with the Constitution and laws of the United States are not within the prerogative of a federal magistrate, nor can they be delegated to him by a federal district judge.

78.      "[N]on-Article III personnel may not usurp functions of Article III judges" See *Northern Pipeline v. Marathon Pipeline*, 458 U.S. 50 (1982). ""Cases involving ... deprivations or transfers of life, liberty, or property constitute a 'core' of cases that ... must be resolved by Article III courts—not executive adjudicators 'dressed up as courts'")." *Axon Enter. v. Fed. Trade Comm'n*, 143 S. Ct. 890, 908 (2023).

79.      The Fifth Circuit shared the same view: ""[T]ials are complex affairs, requiring close oversight of delicate <u>constitutional rights</u>. **[I]rreparable harm** would be done to the authority of the [state] judiciary were such fundamental proceedings <u>delegated</u> to <u>non-Article III</u> tribunals. By <u>giving away</u> their critical [constitutional] jurisdiction, [Article III tribunal] judges would risk devitalizing their own coordinate branch of government, thereby upsetting our constitutional balance of power[4]. Thus, our constitutional concerns about [statutory] authority will grow as [statutory] judges move closer to presiding over trials."(emphasis added) *United States v. Dees*, 125 F.3d 261, 267 (5th Cir. 1997).

80.      The constitutional concerns lie at both the federal and state judiciary levels when core rights are involved. trial. When Texas family court associate judges like Deangelis, usurping the critical constitutional jurisdiction through non-Article III tribunals. Yan sought prospective relief to stop this <u>slippery slope</u> usurpation scenario.

81.      Deangelis' motion errs by asserting absolute immunity for a state statutory judge, for her usurpation acts, which is contradictory to *Bradley* and the principles established in other federal precedents. The three precedents *Bradley*, *Stump* and *Mireles* which Deangelis cited does not support this legal theory.

   2)   The state law cannot change the application scope of federal common-law to bar federal cause of civil action.

82.      "[W]hen interpreting state laws, federal courts are "Erie-bound" by the state supreme court's **most recent authority**" *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 465 n.5 (5th Cir. 2016).

83.      The recent controlling State Supreme Court precedent states, "a federal cause of action that cannot be barred by any state law or policy." See *Taylor v. Tolbert*, 644 S.W.3d 637, 656 (Tex. 2022). Vice versa. "This view generally accords with our analysis … which looked to general common-law

---

[4] "The "slippery slope" scenario here is easy to envision… Meeting with some initial success, the pressure of their crushing caseloads would weaken their resolve and cause district courts to delegate even more [trial remedy] to [associate] judges. Eventually, Congress would notice the trend." *United States v. Dees*, 125 F.3d 261, 267 n.6 (5th Cir. 1997).

principles, rather than the common law of [state] or any particular jurisdiction, in determining that the common-law … doctrine applies to claims..." *Id at* 656.

84.    "But all this parsing of our [prior 2022] case law is not dispositive on this question of" whether any Texas law, including *TEX. FAM. CODE ANN. § 201.017* has federal authoritative power to ban *§ 1983* claim until a recent *Taylor* pronouncement. "[W]e are bound by the most recent decision of a state supreme court…we must follow our decisions interpreting state law **unless** a subsequent state court decision establishes that our prior decision is clearly wrong." *GlobeRanger Corp. v. Software AG U.S., Inc.*, 836 F.3d 477, 498 (5th Cir. 2016).

85.    *Taylor* stated that "a federal cause of action" like *§ 1983* claim "cannot be barred by any state law or policy" and "federal courts are nearly uniform in declining to adopt extra-statutory exceptions and refusing to apply state common-law defenses." *Taylor* at 655.

86.    *Taylor* at 655 admitted that "federal courts have held that government attorneys are absolutely immune from suit under *42 U.S.C. § 1983*." Federal common law has explicitly granted prosecutors and public defenders' absolute immunity under *§ 1983*. However, this immunity is limited to prosecutorial functions performed during court proceedings, not to the identity of the prosecutor. Federal common law expressly holds that when a prosecutor is performing an investigative function, they are entitled only to qualified immunity.

87.    Federal legal framework has not adopted any principal doctrine to permit state law to narrow or broad the application of federal law. While *Bradley*'s plain language does not grant absolute immunity to statutory judges, Yan highly doubts that federal common law would adopt Texas law's language to grant absolute immunity to state statutory judges. Deangelis did not cite any authority to support her legal theory, as of now, the *Taylor* controls.

88.    *Taylor* stated that any prior federal circuit precedent merely citing Texas state law as controlling authority to bar a federal claim is incorrect. For federal causes of action, courts must interpret "[b]ased on the [federal] statute's plain language, which requires exceptions to be explicit." The 2022 *Taylor* decision precluded the authoritative power of *TEX. FAM. CODE ANN. § 201.017* from being applied to *§ 1983* claims. Deangelis failed to cite any federal precedent granting absolute immunity to state statutory actors for *ultra vires* acts depriving of people' core rights, without due process and jurisdiction.

89.     Yan's case is extraordinary. Deangelis signed a TRO without an actual action being filed in her court and granted relief without a claim. *TEX. FAM. CODE ANN. § 201.007* grants an associate judge the power to "render and sign a temporary order," but it does not authorize an associate judge to delegate or outsource the rendering power to an attorney, allowing Barrows to render a TRO while Deangelis signed it. Without a claim/motion/pleading filed electronically under *Tex. R. Civ. P. 21*, Deangelis' associate judge's court never acquired subject matter jurisdiction over an actual controversy. No controversy, no jurisdiction is an firm Article III principle.

    3)  Immunity protects the judicial function performed, not the identity of the actor.

90.     In two recent precedents from Federal Circuits concerning judicial immunity—*Rockett v. Eighmy*, 71 F.4th 665 (8th Cir. 2023), and *Gibson v. Goldston*, No. 22-1757 (4th Cir. Oct. 30, 2023)— both the judicial act and jurisdiction are analyzed. Jurisdiction immunity cannot be granted without applying judicial act and jurisdiction.

91.     *Rockett* at 668-669, stated,

> "Judicial immunity can be "overcome in only two sets of circumstances": (1) when a judge takes "**nonjudicial actions**"; and (2) when the action is judicial, but is done "in the complete absence of all jurisdiction." Mireles v. Waco, … ; see Bradley… (explaining that if the "**character**" of a judge's **act** is "judicial" **and** within "the jurisdiction of **the court**," **then** the judge "cannot be subjected to responsibility for it in a civil action"). These exceptions play a **critical** role in deciding today's case." (citations omitted)(emphasis added).

92.     Deangelis outsourced Barrows to perform a judicial act by rendering a TRO in the complete Delegating judicial power of rendition to attorney and merely signing is not a function that a state statutory judge should perform. absence of a claim, after which she took the ministerial action of signing it.

    4)  Immunity protects the judicial function performed, not the identity of the actor.

93.     Deangelis should not be entitled to any immunity merely because she holds a title and sits in the courthouse.

94.     *Rockett* at 671-672, stated,

> "Even within the case-related realm, the judicial-immunity analysis accounts for the fact that not all proceedings look the same. *A state-court … proceeding may look very different from a … action lawsuit in federal court*." "**Judicial acts can take on different forms**: what may look non-case related in one context may be standard operating procedure in another." "Judicial immunity provides a wide berth for these differences. *Cf. Forrester* … (explaining that judicial immunity "is **justified and defined by the *functions* it protects and serves, not by the person to whom it**

**attaches**"). The array of tasks, courts, and cases has led to the adoption of a functional test: the availability of judicial immunity depends on "**the function performed, not the identity of the actor who performed it**."…On one end of the spectrum, the classic example of a judicial act is "**resolving disputes between parties** who have **invoked the jurisdiction** of a court."" (citations omitted) (emphasis added).

95.    Deangelis asserted blanket judicial immunity, failed to analyze the special context in state associate judge's court. The Court should not grant blanket absolute immunity without look at a wide berth for these differences. The judges in *Rockett* and *Gibson* demonstrated their competence by conducting a detailed analysis.

    5) The analysis of jurisdiction.

96.    "The legal definition of "jurisdiction" is similar: "It is the authority by which courts and judicial officers take cognizance of and decide cases. . . . Power and authority of a court to hear and determine a judicial proceeding." Black's Law Dictionary 766 (5th ed. 1979)" *Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1020 (3d Cir. 1991).

97.    It is obvious that Leslie Barrows was the person who took cognizance of on June 21, 2022, when she rendered TRO without a petition submitted by her client. Barrows took the determination under her own discretion and Deangelis just signed it. It is attorney who possessed the jurisdiction on that date, not the associate judge's court. No claim, no jurisdiction. DeAngelis should not be immune for outsourcing a constitutional jurisdiction that her associate judge's court does not possess and never acquired in the first place.

98.    *Bradley*, at 350, stated that judicial immunity "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences." This condition is not met in Yan's case because it is evident that it is not in the public's interest to tolerant judges, without fear of consequences, to delegate rendition power and depend on attorneys to exercise judicial functions.

99.    "Absolute immunity, however, is "strong medicine, justified **only when** the danger of [officials' being] deflect[ed from the effective performance of their duties] is very great."" *Forrester v. White*, 484 U.S. 219, 230 (1988). Therefore, judicial immunity should not apply.

## 2. **Qualified immunity**

100.    Deangelis asserted qualified immunity in her individual capacity. She argued that Yan must demonstrate: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct" to overcome the defense of qualified

immunity, relying on the Supreme Court precedent *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). She also noted that courts have discretion to address either prong first. Finally, she conclusively stated that Yan failed to sufficiently plead under *Rule 12(b)(6)*. Deanglies was erred. Because the "clearly established" standard was replaced by "obviousness" doctrine in 2020 by the Supreme Court.

101.    After the *Taylor v. Riojas*, 141 S. Ct. 52 (2020) decided, the Fifth Circuit has adopted the **obviousness** doctrine in Qualified Immunity cases (99 citations within Fifth and 33 citations by Fifth alone).

> "The final question is whether this constitutional violation was clearly established. The district court answered "yes," concluding that the sheriffs' actions were an **"obvious" constitutional violation**. See *Hope v. Pelzer* , 536 U.S. 730 (2002); see also *Taylor v. Riojas*  (2020) (**reversing grant of qualified immunity because the violation was obvious**). We **agree**." *Harris v. Clay Cnty., Miss.*, 47 F.4th 271, 279 (5th Cir. 2022).

102.    Furthermore, in 2021, the Fifth Circuit conducted an in-depth analysis in *Villarreal v. City of Laredo,* for the matters of obvious constitutional violation,

> "And as the Supreme Court has repeatedly held, **public officials** are **not** entitled to **qualified immunity for obvious violations of the Constitution**. ...
>
> "[O]fficials can still be on notice that their **conduct** violates established law even in novel factual circumstances." … " '[A] general constitutional rule already identified in the decisional law may apply with **obvious clarity** to the **specific conduct in question**, even though the very action in question has [**not**] previously been held unlawful.'"…Similarly, in **Taylor v. Riojas**" *Villarreal v. City of Laredo*, 17 F.4th 532, (5th Cir. 2021).

103.    In 2024, the 11th Circuit cited another Supreme Court case, *Pearson v. Callahan*, 555 U.S. 223(2009), "[t]he law is **clear** that public officials **are not entitled** to qualified immunity "when they exercise power irresponsibly," **even when** engaged in a discretionary function." *Smart v. England*, 93 F.4th 1283, 1298 (11th Cir. 2024).

104.    It is evident that Deangelis cannot sign a TRO without a petition filed with the court and without a hearing. Such actions deprived Yan of the rights and liberties protected under the Fourteenth Amendment.

105.    Additionally, the Fifth Circuit ruled, "The defendant official **must** initially plead his **good faith** and **establish** that he was **acting within the scope of his discretionary authority**. Once the defendant has **done** so, the burden **shifts** to the plaintiff to rebut this defense" *Bazan ex Rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001).

106.    Deangelis merely asserted qualified immunity without demonstrating her good faith or establishing that she was acting within the scope of her discretionary authority. The burden has not yet shifted to Yan to rebut qualified immunity defense.

### E. Pre-filing injunction.

#### 1. Filing suit is a fundamental constitutional right

107.    The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms. This extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition. See *California Transport v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

108.    "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection" *Marbury v. Madison*, 5 U.S. 137, 163 (1803).

109.    "This court has no desire to deter any litigant from advancing any claim or defense which is arguably supported by existing law, or any reasonably based suggestion for its extension, modification, or reversal. Positions thus taken cannot be considered as frivolous, although they may be unsuccessful and indeed may be given short shrift." *Farguson v. Mbank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

#### 2. Deangelis failed to meet the threshold

110.    "Preliminary injunctive relief is appropriate when the proponent of such relief has met the high threshold burden of proving, "(1) a substantial likelihood that [he] will prevail on the merits, (2) a substantial threat that [he] will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to [him] outweighs the threatened harm the injunction may do to the defendant, and (4) that granting the preliminary injunction will not disserve the public interest."" *Hillsboro News Company v. City of Tampa*, 544 F.2d 860, 861 (5th Cir. 1977).

111.    Deangelis did not expressly state whether she requests preliminary or permeant injunctive relief, leaving this Court to speculate. "We **cannot** accord [her] the advantage of the liberal construction of his complaint normally given *pro se* litigants, *see Estelle v. Gamble,* 429 U.S. 97, 106 (1976), because he is a licensed attorney." *Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977).

112.    Speculatively assuming preliminary, Deangelis states, "In sum, Plaintiff Yan does not have a good faith basis to pursue this action against **Defendants**, and this lawsuit is only designed to harass **Defendants.**" It is evident that Tarrant County DA office does not represent Wang, Tang, Pigg, Barrows,

Zheng or PANOPYRA PLLC. It is impossible for Tarrant County DA office to prove all four points illusively on behalf of the parties they do not represent. When the Tarrant County DA's office has abused its discretion by failing to prosecute a local underground massage business laundering over $100,000 to through a family judge/lawyer-backed racket, what justifies their belief that they have Article III standing to seek injunctive relief barring Yan from filing a civil RICO suit? They do not.

### 3. This injunction is broad, ambiguous with injurious consequences

113.     Speculatively assuming preliminary, Deangelis states, "In sum, Plaintiff Yan does not have a good faith basis to pursue this action against Defendants, and this lawsuit is only designed to harass

114.     Deangelis "requests that this Court issue a pre-filing order, enjoining Plaintiff Conghua Yan from filing further frivolous, vexatious filings in the United States District Court for the Northern District of Texas." Regardless of the basis, the request is overly broad and ambiguous on its face. If granted, it will cause injurious consequences due to the undefined terms, also leaving room for speculation and imagination. Submitting a request in this manner does not demonstrate professional attitude; it demonstrates incompetence.

115.     The plain language of this request asks this Court to ban Yan from filing any future actions against <u>anyone</u>, <u>indefinitely</u>, specifically in <u>this Court</u>. The timeframe is undefined, effectively indicating infinity. The person whom Yan cannot sue are open-ended clauses, including anyone, no matter how they might harm Yan in the future.

116.     Deangelis sought to bar Yan from filing actions only in this Court. If Deangelis truly believes the injunction meets the high threshold of demonstrating "irreparable injury" without it, why is Yan still permitted to file federal claims in any state or federal court except this one? The request lacks logical consistency. This Court should not entertain Deangelis' thoughtless request, appearing to be an utterly moot idea, lacking any sincere purpose or meaningful justification.

117.     Assuming Deangelis seeks a preliminary pre-filing injunction in this case, her reliance on Rule 12 dismissal based on judicial and qualified immunity is contradictory. If her motion to dismiss is denied, she clearly cannot meet the requirement of demonstrating "a substantial likelihood of success on the merits" for the injunction. If she prevails, she will no longer be a party to the case and therefore lacks standing to advocate for a pre-filing injunction on behalf of the remaining parties. In either scenario, her request appears doubtful and should be deemed moot.

118.     ""An injunction will not issue to enforce a right that is doubtful, or to restrain an act, the injurious consequences of which are doubtful." … The extraordinary process of injunction is never

granted for the decisive and permanent enforcement of a right which is involved in reasonable doubt." *Kelliher v. Stone Webster*, 75 F.2d 331, 334 (5th Cir. 1935).

119.    Speculatively assuming permanent, this Court cannot grant a permanent injunction without an appealable final judgment under due process. If this Court believes Deangelis' request has merit, Yan respectfully requests that the Court mandate Deangelis to file a counter-petition or a motion for partial summary judgment, followed by a hearing. Yan is positioned to present his arguments at the hearing.

### F. Amendment to Original Complaint.

#### 1. Invoke cause of action under 42 U.S.C. § 1985(3)

120.    "Due to the liberal consideration accorded pro se pleadings, … we consider this "**Motion**" an **amendment** to … original complaint."[5] And "under the less stringent standards applicable to **pro se litigants**. … Most importantly, however, the court was **required** to look **beyond** the … **formal complaint** and to **consider as amendments** to the complaint **those materials subsequently filed**. … to consider the … **motion**, **memorandum** in support, and **affidavit**, as **amendments** to the complaint. These documents embellished the original complaint's averments, and **each should** have been considered."[6]

121.    "[P]laintiffs need only plead facts—not legal theories,"[7] and ""it is **unnecessary** to set out a legal theory for the plaintiff's claim for relief."[8] ""[C]omplaints plead **grievances**, not legal theories." … So it didn't matter that a complaint "**initially** relied **only** on [some cause of action]"—the plaintiff could still invoke [**other** cause of action] "at **later** stages of the suit." … What's more, the plaintiff "**did not** [even] **need** to **amend** the complaint to do so.""[9]

122.    Yan requests this Court to allow him to invoke supplemental civil cause of action under *42 U.S.C. § 1985(3)* for conspiracy within the second claim against all defendants and urges this Court to consider additional legal theories. Yan reserves the right to invoke further causes of action and to include additional state actor parties under *Rule 15*, should other conspiracies arise in attempts to deprive him of his litigation rights or his ability to claim constitutional damages. See *McLellan v. Mississippi Power Light Co.*, 545 F.2d 919 (5th Cir. 1977).

---

[5] *Wright v. El Paso County Jail*, 642 F.2d 134, 135 n.1 (5th Cir. 1981).

[6] *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983).

[7] *Bye v. MGM Resorts Int'l*, 49 F.4th 918, 929 (5th Cir. 2022).

[8] *Id.*

[9] *Id.*

## VII.    Conclusion

123.    DeAngelis is a state statutory judge and a Tarrant County employee, holding an Article I adjudicative position created under the Texas Family Code. A comparable analogy would be a federal magistrate judge, a position established under the Federal Magistrates Act.

124.    If this Court determines that a state statutory judge can deprive a Chinese immigrant of their property and liberty without a petition or hearing, merely by signing a TRO drafted by two attorneys and entering it into the case docket, it would equate to a legal position where this Court believes that a prosecutor and a public defender could draft an order depriving a Latino of their life without a trial, have it signed by a magistrate, and allow everyone to walk away. That Latino might not even have the chance to file a suit, as Yan has, because he would already be dead.

125.    Depriving someone of their life with statutory authority and due process is considered a judicial death toll; without them, it is murder. The same logic applies to deprivation of Yan's wages and possession of a home. Without statutory authority and due process, it becomes a civil lynch mob committed by legal professionals using the court as a platform. If the judiciary determines that what was done to Yan does not violate the Constitution, it calls into question the very necessity of a judiciary in America.

## VIII.    Prayer for Relief

126.    **"Equitable relief against fraudulent judgments** is not of statutory creation. It is a judicially devised remedy fashioned to relieve hardships which, from time to time, arise from a hard and fast adherence to another court-made rule, the general rule that judgments should not be disturbed after the term of their entry has expired. **Created to avert the evils of archaic rigidity**, this equitable procedure has always been characterized by flexibility which enables it to meet new situations which demand equitable intervention, and to accord all the relief necessary to correct the particular injustices involved in these situations. It was this flexibility which enabled courts to meet the problem raised[.]" *Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238, 248 (1944).

127.    Yan sought monetary relief merely for the injury he suffered, not intending to reverse the state judgment, which remains within the jurisdiction of the state proceedings. The U.S. Supreme Court's certiorari demonstrates that Yan pursued a writ of mandamus in the state supreme court and appealed to the U.S. Supreme Court to address the state judgment. Yan brought this case to federal court to separately address violations of his constitutional core rights.

128.    Meanwhile, Yan sought prospective relief as a remedy in equity, requesting that the state adhere to due process and uphold the integrity of the judiciary. He, along with the public, is entitled to the restoration of due process and the integrity of the state judiciary to its *status quo ante*. However, at this stage, this Court does not need to address the question of remedies.

129.    Based on the above, Plaintiff respectfully requests for the following relief:

130.    Plaintiff prays that the Defendant's Motion to Dismiss be denied as moot.

Respectfully submitted,

_____/s/ Conghua Yan_____
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]
/[arnold200@gmail.com]

**CERTIFICATE OF SERVICE**

On (January 1st, 2025) I, Conghua Yan, certify that I have served the forgoing document on all counsels and/or pro se parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]

# Appendix A

# IN THE SUPREME COURT OF TEXAS

Misc. Docket No. 13-9164

### AMENDED ORDER REQUIRING
### ELECTRONIC FILING IN CERTAIN COURTS

This Order mandates electronic filing ("e-filing") in all civil cases, including family and probate cases, by attorneys in appellate courts, and in all non-juvenile civil cases, including family and probate cases, by attorneys in district courts, statutory county courts, constitutional county courts, and statutory probate courts pursuant to a detailed implementation schedule.

Disputes in court require the exchange of information. The primary medium of that exchange has been paper. Texas courts have struggled for centuries to process, manage, and store court documents. With the information age, it is now possible to receive and store those documents digitally. Texas courts first experimented with this new medium in the 1990s when two district courts urged lawyers to file documents electronically. The benefits were immediate. With electronic filing, storage expenses decreased dramatically. Clerks that formerly spent time sorting and file-stamping documents could be assigned to more productive activities. Documents were no longer damaged or lost. The public, lawyers, and judges could instantly access vital pleadings, accelerating the progress of litigation. These efficiencies prompted the judiciary to initiate a pilot project in January 2003 to test and refine the e-filing model. That model was instituted statewide in 2004 through the state's Texas.gov[1] internet portal. Since that time, a growing number of trial and appellate courts have implemented e-filing.

Currently, the following courts in Texas accept e-filing:
- Supreme Court of Texas (mandatory);
- 9 of the 14 courts of appeals (5 mandatory);

---

[1] The portal was originally named TexasOnline.

- 236 district courts and 81 county courts covering 51 counties and more than 80% of the state's population (mandatory in a few district courts);
- 7 statutory probate courts covering 7 counties; and
- 28 justice courts covering 12 counties.

While most of these courts have accepted e-filings through the Texas.gov portal, several courts have adopted systems that diverge from the Supreme Court's e-filing exemplar. As a result, Texas litigants and attorneys confront several different systems and must master the requirements for each. Without a centralized and uniform portal for accessing court case information, the advantages of filing electronically are greatly diminished.

The federal courts, including the bankruptcy courts, district courts and courts of appeals, offer e-filing through a unified, nationwide system, and most of those courts require lawyers to file electronically. Twenty-three states mandate e-filing to varying degrees. These courts have reported dramatic improvements in efficiency and decreased costs.

This Court convened a hearing on December 8, 2011, to assess the benefits and drawbacks of creating a uniform statewide e-filing system. The Court received testimony from the Chair of the Judicial Committee on Information Technology, a district judge, four district clerks, a representative of the current e-filing vendor, a representative of an e-filing service provider and a law firm technology officer. The Court also received numerous written comments. Almost all of the individuals who testified at that hearing and submitted written comments supported mandatory e-filing and implementation of a uniform statewide system.

The testimony revealed a number of benefits to e-filing in Texas courts, including quicker access to e-filed documents; increased efficiency for attorneys and litigants; reduced printing and mailing costs for attorneys and litigants; reduced storage costs for clerks; greater security of court documents in the event of disaster; more efficient use of court staff, as employees typically assigned to accept documents at the clerk's office counter can be retrained for higher skilled positions; and increased transparency and access to the courts. Information can generally be found more quickly in an e-filed document because of the capacity to search for words and phrases. Documents can also be easily cross-referenced and hyperlinks can facilitate direct citation to other filings, legal databases, and exhibits. All of this enhances the quality of legal advocacy and the quantity of information the tribunal possesses when deciding the case.

The testimony also revealed a number of concerns, including the high cost of e-filing associated with the "toll-road" structure of the current system, which requires litigants to pay a fee each time a document is e-filed; the current system's inability to allow certain government[2]

---

[2] Government filers referenced here are those which are not statutorily required to pay filing fees.

and indigent filers to e-file documents at no cost; the decentralized nature of the current system and accompanying local e-filing rules; and the inability of the current technology to handle an increase in filings.

While considering the information received at the hearing, the Court learned that the vendor who managed the Texas.gov system would not renew its contract. Accordingly, unless appropriate measures were taken, e-filing would expire in Texas in August 2012.[3] The Court, the Judicial Committee on Information Technology ("JCIT"), the Department of Information Resources, and others determined that it would be prudent to seek a new vendor. The Office of Court Administration ("OCA") procured and signed a contract with a new vendor to provide e-filing to all Texas courts. The new e-filing manager ("EFM") system drastically reduces the cost of e-filing and electronic service. The EFM will also permit indigent and certain government filers to submit documents at no cost. Finally, the new system will be scalable to handle as many filings as necessary and will allow for better integration with existing case management software in the courts.

This Court relies on JCIT to develop policy recommendations for the Judiciary on matters relating to technology. JCIT has spent the last several years evaluating the existing e-filing structure and determining how to improve service to the courts and citizens of Texas. After much study, JCIT recommended that the Court "mandate a statewide, uniform system of e-filing for all courts with a phased implementation starting with the most populous counties."

After considering the testimony, both oral and written, provided at the Court's hearing, along with the recommendations of JCIT regarding e-filing, the Supreme Court of Texas concludes that mandatory e-filing in civil cases will promote the efficient and uniform administration of justice in Texas courts.

Accordingly, it is **ORDERED** that:

1. This Order requires e-filing by attorneys in all civil cases, including family and probate cases, at the Supreme Court of Texas and courts of appeals, and in all non-juvenile civil cases, including family and probate cases, at the district courts, statutory county courts, constitutional county courts, and statutory probate courts.

2. E-filing will be mandatory in the Supreme Court of Texas and in all civil cases in the courts of appeals effective January 1, 2014.

---

[3] An eighteen month extension was negotiated between DIR and the current vendor to allow for a transition to a new vendor.

3. E-filing will be mandatory in all non-juvenile civil cases in the district courts, statutory county courts, constitutional county courts and statutory probate courts as directed above according to the following implementation schedule based upon the counties' 2010 Federal Census population:

   a. Courts in counties with a population of 500,000 or more – January 1, 2014
   b. Courts in counties with a population of 200,000 to 499,999 – July 1, 2014
   c. Courts in counties with a population of 100,000 to 199,999 – January 1, 2015
   d. Courts in counties with a population of 50,000 to 99,999 – July 1, 2015
   e. Courts in counties with a population of 20,000 to 49,999 – January 1, 2016
   f. Courts in counties with a population less than 20,000 – July 1, 2016

4. Once a court is subject to mandatory e-filing under this Order, attorneys must e-file all documents in civil cases, except documents exempted by this Order or rules adopted by this Court, through the e-filing manager portal provided by OCA. Attorneys must not file documents through any alternative electronic document filing transmission system (including fax filing), except in the event of emergency. Persons not represented by an attorney may e-file documents, but e-filing is not required.

5. Once a court is subject to mandatory e-filing under this Order, courts and clerks must not offer to attorneys in civil cases subject to this Order any alternative electronic document filing transmission system (including fax filing), except in the event of emergency. And courts and clerks must not accept, file, or docket any document filed by an attorney in a civil case that is not filed in compliance with this Order, except in the event of emergency.

6. The Supreme Court will adopt rules governing e-filing and e-service in accordance with the mandate schedule above.

7. Courts or clerks who believe they cannot comply with this Order by the implementation date specified may petition the Supreme Court for an extension, which may be granted for good cause shown.

This Order supersedes and vacates Misc. Docket No. 12-9206, dated December 11, 2012, and Misc. Docket No. 13-9092, dated June 24, 2013.

SO ORDERED, this _9th_ day of December, 2013.

Nathan L. Hecht, Chief Justice

Paul W. Green, Justice

Phil Johnson, Justice

Don R. Willett, Justice

Eva M. Guzman, Justice

Debra H. Lehrmann, Justice

Jeffrey S. Boyd, Justice

John P. Devine, Justice

Jeffrey V. Brown, Justice