# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| CONGHUA YAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. [4:24-cv-00579-O-BP] |
| | ) |
| THE STATE OF TEXAS et al., | ) |
| | ) |
| Defendants. | ) |
| ————————————————————— | ) |

## PLAINTIFF'S OBJECTION TO FINDINGS, CONCLUSIONS AND RECOMMENDATION

### Cases

Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir. 1989) ................................................................. 20

Arizona v. Fulminante, 499 U.S. 279 (1991) ................................................................................. 20

Brokaw v. Weaver, 305 F.3d 660 (7th Cir. 2002) ......................................................................... 13

Burrell v. Staff, 60 F.4th 25 (3d Cir. 2023) ................................................................................... 17

Childress v. Johnson, 103 F.3d 1221, 1229-30 (5th Cir. 1997) .................................................... 20

City of Austin v. Paxton, 943 F.3d 993 (5th Cir. 2019) ................................................................ 12

Concrete Pipe Prods. v. Constr. Laborers Trust, 508 U.S. 602 (1993) ......................................... 6

Cunningham v. Headstart Warranty Grp., 3:24-cv-545-X-BN, (N.D. Tex. Nov. 20, 2024) .......... 4

Domain Prot., L.L.C. v. Sea Wasp, L.L.C., 23 F.4th 529 (5th Cir. 2022) ...................................... 4

Eagle Railcar Services-Roscoe, Inc. v. NGL Crude Logistics, LLC, No. 1:16-CV-0153-BL (N.D. Tex. May. 22, 2018) ..... 4

Epps v. State, 24 S.W.3d 872 (Tex. App. 2000) ........................................................................... 20

Faretta v. California, 422 U.S. 806 (1975) ...................................................................................... 9

Google, Inc. v. Hood, 822 F.3d 212 (5th Cir. 2016) ..................................................................... 18

Henry v. Cullum Companies Inc., 891 S.W.2d 789 (Tex. App. 1995) ........................................... 15

Housing v. Queen, No. 14-30512 (5th Cir. Mar. 12, 2015) .......................................................... 13

Idaho v. Coeur D'Alene Tribe of Idaho, 521 U.S. 261 (1997) ...................................................... 10

In re State ex rel. Wice, 668 S.W.3d 662 (Tex. Crim. App. 2023) ................................................ 15

Jordan v. State, 256 S.W.3d 286 (Tex. Crim. App. 2008) ............................................................ 20

Nesses v. Shepard, 68 F.3d 1003 (7th Cir. 1995) ......................................................................... 13

New Hampshire v. Maine, 532 U.S. 742 (2001) ........................................................................... 19

Quern v. Jordan, 440 U.S. 332 (1979) ......................................................................................... 11

Ramos v. Louisiana, 140 S. Ct. 1390 (2020) .................................................................................. 6

Rose v. Clark, 478 U.S. 570 (1986) ............................................................................................. 20

Schmutz v. State, 440 S.W.3d 29 (Tex. Crim. App. 2014) ........................................................... 20

*Sealed Appellant v. Sealed Appellee*, No. 22-50707 (5th Cir. Mar. 7, 2024) ...................................................... 6

*Trainor v. Hernandez*, 431 U.S. 434 (1977) .................................................................................................. 18

*Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013) ........................................................................ 13

*U.S. v. Marcus*, 560 U.S. 258 (2010) .......................................................................................................... 19

*United States v. Jones*, 935 F.3d 266, 270 (5th Cir. 2019) ........................................................................ 20

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ......................................................................... 5

*Verizon Maryland Inc. v. Public Service Commission*, 535 U.S. 635 (2002) ............................................. 12

*Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017) .................................................................................... 19

*X Corp. v. Media Matters For Am.*, Civil Action 4:23-cv-01175-O (N.D. Tex. Aug. 16, 2024) ................... 5

# Contents

1    The case is unripe, and the magistrate ruled prematurely, violating the procedural due process. ..................... 4

   A.   The Defendants failed to file the certificate of interest persons and nongovernmental corporate party disclosure statement. ................................................................................................................................. 4

   B.   The Defendants failed to appear in this Court. ........................................................................... 5

   C.   The Court prejudiced a nonparty minor child by disregarding the Plaintiff's motion intended to protect privacy under Rule 5.2. ................................................................................................................ 5

   D.   The FCR set forth a unprecedent dismissal, violated the procedural due process. ................................... 6

2    The FCR erred by finding the wrong facts of the case and disregarded Yan's factual allegations. ................... 8

3    The FCR abandoned the principle of stare decisis. ....................................................................... 10

   A.   The FCR erroneously concluded that sovereign immunity bars 1983 claim against the state because *Young* does not apply. ....................................................................................................................... 10

   B.   The FCR erroneously concluded that Yan has no case against Deangelis to establish standing. .............. 12

   C.   The FCR erroneously concluded that Associate Judge Deangelis is entitled to judicial immunity. .............. 14

   D.   The FCR erroneously concluded that res judicata bars § 1983 and RICO claims. ....................................... 16

   E.   The FCR erroneously concluded that *Younger* abstention applied. ........................................... 18

   F.   The FCR erred by declining to exercise supplemental jurisdiction over state law claims. ........................ 19

4    The FCR failed to distinct structural error and trial error. .......................................................... 19

5    Conclusion and Prayer for Relief ............................................................................................. 21

TO THE HONORABLE JUDGE OF NORTHERN DISTRICT OF TEXAS:

COMES NOW, Plaintiff, Conghua Yan ("Yan"), respectfully submits this objection to the FINDINDS, CONCLUSIONS and RECOMMENDATION ("FCR") [ECF No. 63] for Defendants' Motion to Dismiss and various responsive pleadings, pursuant to *28 U.S.C. § 636(b)(1)*. For the reasons stated below, the FCR should be vacated.

1    The case is unripe, and the magistrate ruled prematurely, violating the procedural due process.

    A. The Defendants failed to file the certificate of interest persons and nongovernmental corporate party disclosure statement.

    1.    Defendants Fuyan Wang, Yuanli Tang, and Panopyra PLLC failed to file the required certificate of interested persons, and Panopyra PLLC also did not submit the corporate party disclosure statement, violating Federal and Local Rules. "As the Court has previously explained, "[e]very party to a civil action must file a certificate of interested persons [(or "CIP")] under the Court's Local Civil Rules,"" *Cunningham v. Headstart Warranty Grp.*, 3:24-cv-545-X-BN, (N.D. Tex. Nov. 20, 2024).

    2.    *See* N.D. TEX. L.R 7.4 Certificate of Interested Persons (" The initial responsive pleading or motion filed in lieu of a responsive pleading that a defendant files in a civil action **must** be accompanied by a separately signed certificate of interested persons that complies with LR 3.1(c) or 3.2(e)"). Also *See* FED. R. CIV. P. 7.1 ("A nongovernmental corporate party **must** file 2 copies of a disclosure statement . . . with its first appearance, pleading, petition, motion, response, or other request addressed to the court ...."). "Both parties **shall** promptly comply with Fed. R. Civ. P. 7.1 and the local rules." *Eagle Railcar Services-Roscoe, Inc. v. NGL Crude Logistics, LLC*, No. 1:16-CV-0153-BL, 38-39 (N.D. Tex. May. 22, 2018).

    3.    *"What is more, the corporate relationships that must be disclosed under Rule 7.1 are those that might warrant a judge's disqualification based on a holding in such an entity. See id. committee note on rules—2002 (explaining that the disclosure requirement "reflects the 'financial interest' standard" that governs disqualification under "Canon 3C(1)(c) of the Code of Conduct for United States Judges")."* *Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 542 (5th Cir. 2022).

    4.    "Rule 7 and Local Rule 3.1 incorporate the definition of "financially interested" from the Code of Conduct." *X Corp. v. Media Matters For Am.*, Civil Action 4:23-cv-01175-O, 2-3 (N.D. Tex.

Aug. 16, 2024). In the absence of Rule 7 and Local Rule 3.1 disclosure statement filed by an opposing party, the judges of this Court are presumed disqualified from making any rulings disfavor Plaintiff in this case as of today. The FCR erred by making a premature ruling.

B. The Defendants failed to appear in this Court.

5.        Defendants Fuyan Wang, Yuanli Tang, and Panopyra PLLC, represented by Charles Davis Chapman, filed responsive answers [ECF No. 52-53] on December 24, 2024. However, Chapman has not yet been admitted to practice in the Northern District of Texas as of today, failing to meet the requirements of N.D. TEX. L.R 83.10(a). Consequently, the defendants remain unrepresented and in nonappearance, and the FCR's premature ruling was in error.

6.        Defendants Jiayin Zheng has not filed responsive answers as of today. The FCR's premature ruling was in error.

7.        "In our adversarial system of adjudication, we follow the principle of party presentation. … as a general rule, our system "is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." … [C]ourts "do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties."" *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).

8.        The FCR violated the party presentation principle by sua sponte dismissing Defendants Fuyan Wang, Yuanli Tang, and Panopyra PLLC despite the absence of attorney representation, and dismissing Jiayin Zheng despite lacking a responsive pleading, thereby prejudicing the pro se Plaintiff.

C. The Court prejudiced a nonparty minor child by disregarding the Plaintiff's motion intended to protect privacy under Rule 5.2.

9.        The Court failed to rule on the Plaintiff's first amended emergency sealed motion to strike [ECF No. 40] for the violation of FED. R. CIV. P. 5.2, blatantly prejudicing a nonparty minor child.

10.        "**At minimum**, all filings should be redacted for consistency with Federal Rule of Civil Procedure 5.2(a), which generally requires parties to partially redact information such as … **names of minor children**. In this case, it is also clear that the balance of interests favors redacting material such

as the names of any additional family members, along with addresses and any other contact information for Plaintiff and her family." *Sealed Appellant v. Sealed Appellee*, [No. 22-50707, 6](#) (5th Cir. Mar. 7, 2024). [ECF No. 40 at ¶5].

11.     "The Framers of our Constitution understood that the doctrine of stare decisis is part of the "judicial Power" and rooted in Article III of the Constitution. … emphasized the importance of stare decisis : To "avoid an arbitrary discretion in the courts, it is indispensable" that **federal judges "should be bound down by strict rules and precedents**, which serve to define and point out **their duty in every particular case** that comes before them."… In the words of THE CHIEF JUSTICE, stare decisis' "greatest purpose is to serve **a constitutional ideal—the rule of law**."" *Ramos v. Louisiana*, [140 S. Ct. 1390, 1411](#) (2020).

12.     The Plaintiff's minor child is a nonparty, and the child name is irrelevant to this case. This Court must clarify whether FED. R. CIV. P. 5.2 still governs proceedings in this Court and whether the Fifth Circuit precedent controls district court. The answer will inform the public whether this Court still truly serves the rule of law. Disregarding the child's privacy demonstrates bad faith.

D. The FCR set forth a unprecedent dismissal, violated the procedural due process.

13.     "[D]ue process requires a "neutral and detached judge in the first instance,"…"[J]ustice," indeed, "must satisfy the appearance of justice, and this stringent rule may sometimes bar trial [even] by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties."" *Concrete Pipe Prods. v. Constr. Laborers Trust*, [508 U.S. 602, 618](#) (1993).

14.     Due process mandates equal application of established federal civil procedures and laws to every party. No exceptions should be made for counsel-represented parties in this Court. The FCR erred by disregarding rules and laws.

15.     Defendant Lori Deangelis's filing blatantly violated Rule 5.2. Defendant Jiayin Zheng had not filed a Rule 8 responsive pleading. Defendants Panopyra PLLC had not filed a Rule 7.1 disclosure statement. Defendants Fuyan Wang, Yuanli Tang, and Panopyra PLLC's counsel, Charles Davis

Chapman, had not been admitted to the Court. None of these seemed to matter to this Court. The FCR was rushed out to dismiss Plaintiff's suit in desperation.

16.    "The basic thing is that most judges regard these people as kind of trash not worth the time of a federal judge,"[1] former Judge of 7th U.S. Circuit Court of Appeals, Richard Posner said. It appeared that pro se Plaintiff was treated like trash in this Court.

17.    "As I see it, the judiciary in this country is the last leg of a shaking stool and the glue of public confidence in its pronouncements is **gradually starting to crack**…we provide our people a judge who is competent and free of the appearance of a *quid pro quo* taint. But, **most isn't good enough**,"[2] Court of Criminal Appeals Presiding Judge David J. Schenck said:

> "If the public continues to lose confidence that the judges (from either political party) are playing it nice straight and true, because one side has written a check the night before the hearing or because the judge sees himself as a participant in the political battles that the judiciary is meant to resolve, there will be nowhere else to go to settle our differences and ultimately nothing left worth defending.
>
> For two decades now, the **U.S. Supreme Court has called on state courts to reform themselves**. Some have. Most, including **Texas**, **have not**.
>
> It's **well past time** for the state courts, including those in Texas, to **clean up their act**, …to stop judges from asking people appearing before them for contributions and from otherwise becoming deeply entangled in the money politics that have animated the decline of the other two branches." *Id.*

18.    Local Fort Worth family lawyers cabal calling family court litigants, "whiny ass client"[3] of "Divorce Corp."[4] The 325th court judge was in the "whiny ass client" show and was in the documentary "Divorce Corp" as well. Plaintiff recommends that the federal judge view James O'Keefe's recent 'whiny ass client' report on YouTube to determine whether the Northern District of Texas Federal Court wishes to be associated with the cesspool of Fort Worth family court judges and lawyers, and to shield their misconduct.

---

[1] ABA Journal, Posner: Most Judges Regard Pro Se Litigants as 'Kind of Trash Not Worth the Time', available at https://www.abajournal.com/news/article/posner_most_judges_regard_pro_se_litigants_as_kind_of_trash_nor_worth_the_t

[2] Dallas Morning News, Confidence in Courts is Flagging, and Texas Isn't Helping, available at https://www.dallasnews.com/opinion/commentary/2024/08/31/confidence-in-courts-is-flagging-and-texas-isnt-helping/

[3] https://www.youtube.com/watch?v=HK2aDDwCckk

[4] https://www.youtube.com/watch?v=th0R2nxva2w

19.    "The benefits of the integrity and moderation of the judiciary … must have commanded the esteem and applause of all the virtuous and disinterested."[5] When all the Fort Worth family law lawyers and judges laughed and called family court litigants "whiny ass clients," the Fort Worth judiciary lost the esteem and applause of all the virtuous and disinterested. Judicial independence does not last long in the absence of judicial integrity.

20.    However, when the opportunity arose to address the deep-seated corruption in the Fort Worth family courts, this FCR erred by deciding to dismiss the case, sweeping the dirt under the rug in a manner that violated procedural due process and hastened the erosion of public confidence in the judiciary, ostensibly to glue Fort Worth judiciary unity.

## 2    The FCR erred by finding the wrong facts of the case and disregarded Yan's factual allegations.

21.    The FCR erroneously stated that "Yan sues the State, various lawyers involved in his previous divorce suit, and others involved in an alleged conspiracy to conceal money laundering, violate his rights secured under the United States Constitution, and miscellaneous claims regarding fraud under Texas and Minnesota law. See ECF No. 9 at 7, 12, 17, 19, 20, 23. These claims arise out of Yan's disagreements with an underlying state divorce action."

22.    Yan's complaint, [ECF No. 9 at ¶¶ 23-34], alleges that Defendant Fuyan Wang and Panopyra PLLC engaged in a pattern of RICO money laundering under instructions from a Dallas-Fort Worth-based network since 2018. The divorce suit began in 2021. It is a facial error to claim that RICO money laundering acts between 2018 and 2020 arise from a future 2021 action.

23.    Contradictorily, the divorce action actually arose from Yan's attempt to expose Defendant Fuyan Wang's money laundering activities. Yan consistently cited money laundering as grounds for fault in the divorce. The divorce proceedings have been continuing part of a RICO conspiracy to further the money laundering scheme with the participation of various lawyers since 2021. In the fact, the RICO money laundering claim is a standalone federal civil cause of action, even without the involvement of the state, various lawyers, other defendants, or the divorce proceedings.

---

[5] *Alexander Hamilton*, The Federalist No. 78, in The Federalist Papers 467 (Clinton Rossiter ed., 1961).

24.    The erroneous findings of fact are fundamental; they changed the landscape of this suit, mischaracterizing a RICO money laundering suit involving a massage business enterprise as a dispute over unfavorable state court divorce proceedings. The word "massage" never appeared in the finding of fact, despite of Yan's factual allegation, [ECF No. 9 at ¶23],

> "Plaintiff alleges that, since 2018 to present, Defendants Fuyan Wang has committed a pattern of tax evasion under RICO enterprise Panopyra PLLC, through her business of **massage**, violations of section 7201 or 7206 of the Internal Revenue Code of 1986, obtained more than $100,000 cash income, constituted violation of 18 U.S.C. § 1962(a)(c)."

25.    In the RICO suit involving large amount of money laundering, the FCR erred by failing to identify any transaction amount that Yan alleged in the complaints. The only financial figure the FCR cited was that Yan claimed injury of "$150,000 in unnecessary attorney fees and expenses," [ECF No. 63 at 2]. No second dollar symbol is mentioned in the entire FCR. A magistrate should have known that claimed injury is not part of factual allegation of defendants' unlawful act. The FCR erred by disregarding Yan's entire factual allegations.

26.    Yan's complaint, [ECF No. 9] at ¶¶ 23-34, alleges "$100,000," "$11,700," "$3,000," "$2,900," "$10,800," "$20,000," "$50,000," "$30,000," "$40,000," and "<u>CASH</u>," highlighted in bold. None of these figures or the word "<u>CASH</u>" are mentioned as part of findings of fact in the entire FCR. One Fort Worth family law attorney bragged that he can get guaranteed results in three courts. Does this Court want to be the fourth court that renders guaranteed dismissal despite the allegations?

27.    Our Founders never trusted the lawyers:

> "In the American Colonies the insistence upon a right of self-representation was, if anything, more fervent than in England.
> The colonists brought with them an **appreciation of the virtues of self-reliance** and a **traditional distrust of lawyers**. When the Colonies were first settled, "the **lawyer** was **synonymous** with the cringing Attorneys-General and Solicitors-General of the Crown and the **arbitrary Justices** of the King's Court, all bent on the conviction of those who opposed the King's prerogatives, and twisting the law to secure convictions." This prejudice gained strength in the Colonies where "**distrust of lawyers became an institution**." Several Colonies prohibited pleading for hire in the 17th century. The prejudice persisted into the 18th century as "**the lower classes came to identify lawyers with the upper class**." The years of Revolution and Confederation saw **an upsurge of antilawyer sentiment**, a "sudden revival, after the War of the Revolution, of the old **dislike and distrust of lawyers as a class**." **In the heat of these sentiments the Constitution was forged**." *Faretta v. California*, <u>422 U.S. 806, 826-27</u> (1975).

28.    Two hundred years later, the family law business became the only profession in this country, lawyers and judges laugh at their clients, calling them "whiny ass clients." With the arbitrary magistrate in this court twisting Yan's claim again and again to shield these judges and lawyers, it is evident that the King of England is gone, but the same type of person which our Founders distrusted have returned.

## 3    The FCR abandoned the principle of stare decisis.

### A.  The FCR erroneously concluded that sovereign immunity bars 1983 claim against the state because *Young* does not apply.

29.    The FCR erred stated that Yan merely sued the prospective relief to bar the garnishment of his income every two weeks. The FCR erred concluded that the relief is retrospective rather than prospective:

> "However, this garnishment results from a previous state court child support case, and he seeks **retrospective relief in the form of injunctions against the State**. See ECF No 9 at 15-16. Any violations are a result of the state court's order. **The state court disposed of that case**, and there is **no potential for ongoing federal law violations**."

30.    "Our precedents do teach us, nevertheless, that where prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, **in most cases, is not a bar**" *Idaho v. Coeur D'Alene Tribe of Idaho*, 521 U.S. 261, 276-77 (1997).

31.    Sovereign immunity is in place to bar action seeking recovery of money from the state. "We held that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."" *Idaho* at 277.

32.    The State is sued under official capacity. Yan never sought to seek recovery of money from the State. Yan's complaint [ECF No. 9 at ¶¶ 72-72], alleges:

> "Plaintiff alleges that, Defendant Leslie Starr Barrows, William Albert Pigg, and Lori L. DeAngelis, in their **individual** capacities, are jointly and severally liable for the **monetary relief**.
>
> Plaintiff alleges that, Defendant the **State of Texas is liable for the prospective relief**"

33.     Yan's complaint [ECF No. 9 at ¶¶ 74-82], seeks following declaratory and injunctive relief:

> The Court should issue a preliminary and permanent injunction **enjoining** the State of Texas to **implement a process** mechanism to ensure that all court **documents** submitted are fully **traceable**, **without the risk of forgery**.
>
> The Court should issue a preliminary and permanent injunction **enjoining** the State of Texas from permitting counsel for **one party to underwrite the court's rendition into an order**.
>
> The Court should issue a preliminary and permanent injunction **enjoining** the State of Texas from allowing counsel to **submit judge-signed orders in person** to the court docket.
>
> The Court should issue a preliminary and permanent injunction **enjoining** the State of Texas from conniving to **delegate general constitutional jurisdiction to statutory judges** within the Texas judicial framework
>
> The Court should issue a preliminary and permanent injunction **enjoining** the State of Texas to **implement a process** mechanism to ensure **that all de novo hearing must be timely and completely heard**.
>
> The Court should issue a preliminary and permanent injunction enjoining the State of Texas to **implement a process** mechanism that **unconstitutional temporary order in the family court is appealable**.
>
> The Court should issue a preliminary and permanent injunction **enjoining** the State of Texas **to identify all litigants whose orders have been secretly signed and rendered** by the Tarrant County family court judge in the last ten years. **These identified orders** were secretly entered into the case docket without the litigant parties' knowledge and, lacking proof of service, **must be properly reserved**.
>
> The Court should issue a preliminary and permanent injunction enjoining the State of Texas to **identify all litigants** who requested a de novo hearing but whose temporary orders were **secretly signed and rendered** by the Tarrant County family court associate judge in the last ten years. These **identified orders** must be void, and the litigants must be **entitled to a new trial**.
>
> The Court should issue a **declaratory judgment** affirming that taxpayers' **funds cannot be knowingly spent** to advocate for state actors who blatantly deprive citizens of their constitutional rights, as this creates an uneven playing field against citizens. Alternatively, and additionally, the Court should issue a **declaratory judgment** affirming that equal funds should be diverted to citizens whose constitutional rights were deprived, as this creates a level playing field

34.     Yan pleaded "identify all litigants … must be properly reserved, which is a "mere explanatory notice"—a permissible prospective relief. *Quern v. Jordan*, 440 U.S. 332, 333 (1979).

35.     None of these prospective reliefs against the state are related to monetary recovery, which is barred by the Eleventh Amendment. The Eleventh Amendment and Sovereign Immunity do not apply to this case.

36.     Secondly, the FCR erred by stating, '[t]he state court disposed of that case, and there is no potential for ongoing federal law violations.' In fact, the state court case is still ongoing. Therefore, the retrospective relief conclusion is erred.

37.     The most erroneous part is that **neither Yan nor the State** has pleaded that the *state court disposed of that case*, and the State *never* argued that there is no potential for ongoing federal law violations. How the FCR could sua sponte issue this falsified 'disposed of' statement and argue 'no potential' on behalf of the State is a question: Is there any ex parte communication going on among the court actors to mislead about the facts?

38.     "The **Supreme Court's recent Ex parte Young jurisprudence explains** that the inquiry into whether a suit is subject to the Young exception **does not require an analysis of the merits** of the claim. … Rather, "a court need **only** conduct a 'straightforward inquiry into **whether** [the] complaint…seeks relief **properly characterized as prospective**.'""[6] Yan's objection [ECF No. 25] at page 5, cited *City of Austin* and *Verizon Maryland Inc*, this FCR disregarded these Supreme Court and Fifth precedents.

39.     Yan's complaint has properly characterized prospective relief, including explanatory notice, injunction, and declaration. He has not sought monetary recovery from the state; that is sufficient. The FCR erred.

B.  The FCR erroneously concluded that Yan has no case against Deangelis to establish standing.

40.     The FCR erred by framing Yan as a disgruntled family court litigant suing a state judge for unfavorable outcomes in state court proceedings. This is a typical mischaracterization that Yan has repeatedly seen in the Northern District of Texas, federal court, especially when the plaintiff is a pro se.

---

[6] *City of Austin v. Paxton*, [943 F.3d 993, 998](#) (5th Cir. 2019). (citation omitted) (citing *Verizon Maryland Inc. v. Public Service Commission*, [535 U.S. 635](#) (2002)).

41.     The district court has abandoned the stare decisis principle by disregarding Fifth Circuit adopted *Neses* reasoning. Yan's response and objection to motion to dismiss [ECF No. 59 at ¶38], stated:

> "**Family court proceedings are not a paradise for federal white-collar crime**. The Fifth Circuit adopted *Neses* reasoning from *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995) in *Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013). *Truong* reaffirms a federal remedy where state proceedings are corrupted to facilitate a federal offense. It has been cited hundreds of times, reinforcing the principle that claims under federal civil causes of action and those disputing a state judgment are distinct. See also *Housing v. Queen*, No. 14-30512 (5th Cir. Mar. 12, 2015)."

42.     *Truong* clearly states that a "state-court loser's claim for damages as to state-court winner's allegedly fraudulent statements in state-court litigation," a claim that "the state-court plaintiffs' lawyers obtained a … judgment through fraudulent misrepresentations," a claim that "the defendants conspired to engineer its loss in state court by exercising improper influence on state judges," or "claims that state-court opponents committed fraud and abuse of process" are all considered independent claims, each with its own standing.

43.     "As we explained in Nesses, any other conclusion would mean that "there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment, . . . ."" *Brokaw v. Weaver*, 305 F.3d 660, 665 (7th Cir. 2002).

44.     Yan's complaint [ECF No. 9 at ¶¶ 62-63, 66-70] alleges that his constitutional [ECF No. 59 at ¶¶58, 62,65] and concrete injuries [ECF No. 59 at ¶70] are directly traceable to Associate Judge Deangelis' exceptionally unlawful conduct. She signed and entered a fraudulent TRO into the court record when her court had no actual "controversies" pending and in the absence of a filed motion or held hearing. The fraudulent TRO was not even an outcome of judicial court proceeding. Entering a court TRO record without actual "controversies" pending, or without a motion or hearing, falls outside the judicial legal framework. The proper legal definition of this conduct is called structural error or extrinsic fraud.

45.     The FCR erred by concluding that "no case or controversy exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute." Plaintiff alleged that there was no claim for Associate Judge Deangelis to adjudicate on that day. The same Article

III standing that DeAngelis claimed also prevents her from adjudicating against the Plaintiff without a claim. This case is a classic Fourteenth Amendment violation case. The FCR erred.

46.     Yan's objection [ECF No. 59 at ¶64] argued that "Yan has a federal statutory cause of action under § 1983 to sue DeAngelis, Barrows and Pigg for the violation of Fourteen Amendment." The FCR disregarded it.

C.  The FCR erroneously concluded that Associate Judge Deangelis is entitled to judicial immunity.

47.     The Supreme Court is clear that "the conduct of a judge surely does not become a judicial act merely on his **own say-so**. A judge is not free, like a loose cannon, to inflict indiscriminate damage whenever he announces that he is acting in his judicial capacity" *Stump v. Sparkman*, 435 U.S. 349, 367 (1978).

48.     The FCR erred by stating that "**Yan does not allege** that Judge DeAngelis's actions were nonjudicial in nature or that she took them in the complete absence of all jurisdiction." **Contrarily**, Yan's complaint [ECF No. 9 at ¶¶62-63] **alleged**:

> "Plaintiff alleges that, Defendant Leslie Starr Barrows, William Albert Pigg, and Lori L. DeAngelis colluded to enter a fraudulent (TRO) **lacking of actual "controversies"** when **no actual motion named in the TRO filed into the associate judge's court**.
> Plaintiff alleges that the fraudulent TRO entered violated Procedural Due Process of Fifth and Fourteen Amendment. In the absence of a motion filed, this order lacks the elements of notice, opportunity to be heard, impartial tribunal, and decision based on the record, among others. Plaintiff alleges that, on June 21, 2022, Defendant Lori DeAngelis' ministerial signing act is an ultra vires act, **her associate judge's court clear absence of all jurisdiction**."

49.     It is well established that an associate judge's court obtains subject matter jurisdiction over a claim. Without a claim, the associate judge's court clearly lacks all jurisdiction. Yan did not conclusory labels Associate Judge DeAngelis' **signing orders** actions as "ultra vires," Yan factually alleged that there was not claim filed to the associate judge's court. Furthermore, the FCR erred by concluding that Associate Judge DeAngelis had an **issuing order** act on that day, "**issuing order**" is not a judicial act defined by Texas law. The FCR failed to characterize the judicial act in a professional method.

50.      "A judgment[order] routinely goes through three stages: rendition, reduction to writing and judicial signing, and entry." (emphasis added) *Henry v. Cullum Companies Inc.*, 891 S.W.2d 789 (Tex. App. 1995).

51.      "A judgment is "rendered" when the trial court's decision upon the matter submitted to it for resolution is officially announced either orally in open court or by memorandum filed with the clerk. Samples Exterminators v. Samples, 640 S.W.2d 873, 875 (Tex.1982) ; Henry, 891 S.W.2d at 792. The rendition of the trial court's decision, whether in open court or by official document of the court, is **the critical moment** when the judgment becomes effective. Henry, 891 S.W.2d at 792. "**The signature of the trial court upon the writing is merely a ministerial act** of the court conforming to the provision of Rule 306a(2) of the Texas Rules of Civil Procedure which calls for 'all judgments, decisions and orders of any kind to be reduced to writing and signed by the trial judge with the date of signing stated therein.' " *Id*.

52.      The minimum requirement of the public for the judiciary is to identify basic facts. The FCR erred further by concluding that "the complained-of conduct by **Judge** DeAngelis was judicial in nature and was undertaken pursuant to the j**urisdiction of the 325th Judicial District Court** of Tarrant County, Texas, **Judge** DeAngelis is entitled to absolute judicial immunity." The simple and plain indisputable fact is that DeAngelis is an Associate Judge, possessing authority in the Associate Judge's Court. **She is not a district judge** and **does not possess the jurisdiction of the 325th Judicial District Court** of Tarrant County, Texas. A federal magistrate should have known that a magistrate's court is not a federal district court. Similarly, an associate judge is not the same as a district judge in state district court. **There are two courts**.

53.      "In Texas, courts have jurisdiction—the power over the subject matter and person, while judges have authority—the power to preside over a case. See Davis v. State …. ("While our case law has called the authority of the judge to preside a jurisdictional issue, we now disavow that characterization, because as we have explained, jurisdiction or judicial power is vested in courts, not individuals."" *In re State ex rel. Wice*, 668 S.W.3d 662, 672 n.43 (Tex. Crim. App. 2023).

54.      Finally, the FCR erred by stating, "Yan even admits that **Judge** DeAngelis issued the orders that are the subject of **his** complaint. *See* ECF No. 9 at 13." **Contrarily**, Yan's complaint [ECF No. 9 at ¶54] alleged that, "[t]here was no Motion for TRO filed by Respondent Fuyan Wang in the

case." Furthermore, Yan cannot find any word on page 13 indicate that he had admitted that **Associate Judge** DeAngelis issued **orders**. All Yan stated was that he had a complaint pending in the district court, not in Associate Judge DeAngelis' court, and his constitutional right to be heard by a constitutional judge was deprived. Omitting the word "Associate" is a material error, as it determines which court possessed jurisdiction over the controversy at that time.

55.    The FCR erred by granting judicial immunity to **Associate Judge** DeAngelis, ignoring Yan's factual allegations. The FCR failed to cite any controlling procedure to support the legal conclusion that a court has acquired subject matter jurisdiction in the absence of a claim.

D.  The FCR erroneously concluded that res judicata bars § 1983 and RICO claims.

56.    The FCR's conclusion that res judicata bars § 1983 and RICO claims is a complete disaster, made without examining the facts and relying solely on conclusory labeling and repeatedly twisting.

57.    Two RICO claims are not identical merely because Barrows, Pigg, and DeAngelis appeared in both cases. The two RICO claims are distinct because the predicate acts defined under 18 U.S. Code § 1961 are different. The Pittman case involved 18 USC § 664, while this case involves 18 USC § 1956.

58.    The two RICO claims are distinct because the RICO enterprise defined under 18 USC § 1962 are different. The Pittman case involved the State Bar of Texas, while this case involves Panopyra PLLC.

59.    The two RICO claims are distinct because the patterns defined under 18 USC § 1962 differ. The Pittman case involved an ERISA fund embezzlement pattern in state court proceedings that started decades ago and continues to the present, while this money laundering case began in 2018 and continues to the current date.

60.    The two RICO claims are distinct because either scheme stand alone, are not dependent on each other scheme. The FCR erred by concluding that "Panopyra LLC, Fuyan Wang, Jiayin Zheng, and Yuanli Tang. Yan's claims against these defendants should be dismissed because they also arise from Yan's Tarrant County divorce litigation." It is evident that Panopyra LLC, Fuyan Wang engaged money

laundering since 2018, while the divorce litigation stared from 2021. A money laundering act cannot arise from a future divorce litigation act.

61.　　The two § 1983 claims are distinct because the alleged acts differ. The Pittman case involved the associate judge's court, which clearly lacked statutory jurisdiction, rendering and altering a QDRO order in April and May 2022. In contrast, this case involves a TRO entered in June 2022 without any claim in that court.

62.　　The FCR stated that this court has inherent power to dismiss frivolous lawsuits. While it is true that the judiciary possesses inherent power, this court has repeatedly framed Yan's claims against the family court judge as frivolous, an outcome anticipated by the Founders. Given the power of the judiciary, it "will enable them to mould the government, into almost any shape they please." *Brutus*, The Anti-Federalist No. 11, in The Complete Anti-Federalist 374 (Herbert J. Storing ed., 1981).

63.　　"The judges are supreme — and no law, explanatory of the constitution, will be binding on them." *Brutus*, The Anti-Federalist No. 11, in The Complete Anti-Federalist 374 (Herbert J. Storing ed., 1981). In the current legal framework, the Plaintiff cannot prevent any judge from manipulating his claim in federal court to secure a dismissal in favor of another judge or from issuing a fraudulent order in state family court to award attorney's fees.

64.　　The former Judge of 7th U.S. Circuit Court of Appeals, Richard Posner already admitted that "**most** judges regard these people as kind of trash not worth the time of a federal judge," "most isn't good enough," Court of Criminal Appeals Presiding Judge David J. Schenck said so.

65.　　"Choices usually come with consequences. We can honor our obligations, pursue opportunity, make good on our debts. Or we can walk the other way and decline to play by the rules. Ordinarily, law fences these two paths, rewarding industry and honesty, penalizing irresponsibility." *Burrell v. Staff*, 60 F.4th 25, 50 (3d Cir. 2023).

66.　　Whether two subjects are truthful identical is a matter of fact, not a matter of law. "[A]rriving at the truth is a fundamental goal of our legal system" *United States v. Havens*, 446 U.S. 620, 626 (1980). All the Plaintiff can do is preserve the res judicata issue, pray for and judicial morality and integrity, and hope to encounter a good enough federal judge who is not among the corrupted majority at some point.

E.  The FCR erroneously concluded that *Younger* abstention applied.

67.      The FCR erred by stating that "the Court should abstain from entertaining his [RICO] claims under Younger and dismiss his claims against Panopyra, Wang, Zheng, and Tang without prejudice."

68.      First of all, Defendants Panopyra, Wang, Zheng, and Tang are alleged under a RICO money laundering claim, and Rule 8 requires all parties to plead a defense under each claim. These Defendants never pleaded *Younger* abstention under the RICO claim. The FCR advocated on behalf of the Defendants, departing from the party presentation principle.

69.      Secondly, the alleged RICO money laundering scheme involving "Panopyra, Wang, Zheng, and Tang" has nothing to do with the third *Younger* exceptional circumstance, which states that civil proceedings involve certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions. There were no orders uniquely involving the state court's ability. Panopyra's money laundering RICO scheme began in 2018, when the state court proceeding played no role.

70.      A RICO case is a federal statutory civil cause of action, while a divorce case is a state statutory individual cause of action. Panopyra, Zheng, and Tang are not even parties to the state divorce proceedings. It is quite arbitrary to conclude that these two claims could overlap or cause disruption.

71.      The Supreme Court has made it clear that applying *Younger* abstention is to avoid 'interrupting [state] enforcement proceedings pending decision of the federal court' and the 'disruption of suits by the State in its sovereign capacity' (*Trainor v. Hernandez*, 431 U.S. 434 (1977)). ""[A]bstention from the exercise of federal jurisdiction," it must be remembered, "is the 'exception, not the rule.' " *Sprint,*" *Google, Inc. v. Hood*, 822 F.3d 212, 223 (5th Cir. 2016). "Younger does not apply comports with the doctrine's underlying principles because, in the absence of any pending [RICO claim] state judicial proceeding, federal intervention would not "result in duplicative legal proceedings"" *Id.*

72.      Additionally, the Supreme Court held:

> "This rule, known as **judicial estoppel**, "generally **prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.**" … its purpose is "to protect the integrity of the judicial process," … "prohibiting parties from deliberately changing positions according to the exigencies of the moment," …

("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); (judicial estoppel "protect[s] the essential integrity of the judicial process"); … (judicial estoppel prevents parties from "playing `fast and loose with the courts'"… Because the rule is intended to prevent "improper use of judicial machinery," … judicial estoppel "is an equitable doctrine invoked by a court at its discretion,"" *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001).

73.     The FCR stated that there is "ongoing state court proceedings" at page 20, when applying *Younger* abstention, but stated "[t]he state court disposed of that case, and there is no potential for ongoing federal law violation," at page 11. Judicial estoppel protects the essential integrity of the judicial process. A court should not deploy a fast and loose tactic against the Plaintiff for the dismissal purpose.

74.     The FCR erred by concluding that the Plaintiff's RICO claim against Defendants in their individual capacities would disrupt the state's sovereign capacity. Therefore, it erred by dismissing Yan's RICO claim against Panopyra, Wang, Zheng, and Tang without prejudice, in the absence of Defendants' argument.

F.  The FCR erred by declining to exercise supplemental jurisdiction over state law claims.

75.     As discussed above, the FCR erred by dismissing federal claims in this case; therefore, this court should still exercise supplemental jurisdiction over Yan's state law claims. The FCR erred.

## 4   The FCR failed to distinct structural error and trial error.

76.      "This secretly entered fraudulent TRO on June 21, 2022, lacking of notice, under conspiracy, prejudiced and deprived Plaintiff of right to access appellate review." is a structural error, not a trial error. Therefore, whether this order is an unfavorable decision does not matter.

77.     The Supreme Court "have noted the possibility that certain errors, termed "structural errors," might "affect substantial rights" regardless of their actual impact on an appellant's trial." *U.S. v. Marcus*, 560 U.S. 258, 263 (2010).

78.     "The purpose of the structural error doctrine is to ensure insistence on certain basic, **constitutional guarantees that should define the framework** of any [] trial. Thus, the defining feature of a structural error is that it "affect[s] the framework within which the trial proceeds," rather than being "simply an error in the trial process itself."" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017).

This Court should focus on the errors that affect the judicial framework rather than the errors in findings of fact.

79.    "Thus, in the case of a structural error … generally is entitled to "automatic reversal" regardless of the error's actual "effect on the outcome."" *Id* at 1910. See *United States v. Jones*, 935 F.3d 266, 270 (5th Cir. 2019).

80.    "Drawing an analogy to harmless error analysis**, the court distinguished "trial errors" from "structural errors."** Trial errors must be analyzed in the particular circumstances of each case to determine whether prejudice resulted. In contrast, structural errors so undermine confidence in the fairness and reliability of the proceedings that prejudice is presumed" *Childress v. Johnson*, 103 F.3d 1221, 1229-30 (5th Cir. 1997).

81.    The highest court of Texas agreed, "[a] "structural" error "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself and "render[s] a trial **fundamentally unfair**."" *Jordan v. State*, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008)(Citing *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) and *Rose v. Clark*, 478 U.S. 570, 577 (1986)).

82.    "All structural errors must be founded on a violation of a federal constitutional right" *Schmutz v. State*, 440 S.W.3d 29, 35 (Tex. Crim. App. 2014). ""A structural error requires automatic reversal and **is not subject to harmless error analysis** because it involves a deprivation of a constitutional protection so basic that in its absence," *Epps v. State*, 24 S.W.3d 872, 879 n.3 (Tex. App. 2000).

83.    "Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms. In our estimation, however, the present case is a near-classic example of the genre. Appellant's bad faith is manifest. …The tactic plainly hindered defendant's ability to prepare and present its case, while simultaneously throwing a large monkey wrench into the judicial machinery. In our view, this gross misbehavior constituted fraud on the court. *See Cleveland Demolition Co. v. Azcon Scrap Corp.,* 827 F.2d 984, 986 (4th Cir. 1987) (fraud on court may exist where witness and attorney conspire to present perjured testimony); *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1338 (5th Cir. 1978) (same, where party, with counsel's collusion, fabricates evidence)." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118-19 (1st Cir. 1989).

## 5   Conclusion and Prayer for Relief

84.     Based on the above, Plaintiff respectfully requests this Court to grant the objection and vacate the FCR.

85.     Plaintiff respectfully requests this Court to grant the motion to strike [ECF No. 40] or compel redaction under rule 5.2 to protect minor child's privacy.

86.     Plaintiff is very disappointed with the appearance of bias in this particular case. Plaintiff respectfully requests this Court to recuse the Honorable Magistrate Judge.

Respectfully submitted,

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]
/[arnold200@gmail.com]

<u>CERTIFICATE OF SERVICE</u>

I, Conghua Yan, hereby certify that I have served the forgoing document on all counsels and/or pro se parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2) On (January 29th, 2025).

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]