# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CONGHUA YAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. [4:24-cv-00579-O-BP] |
| THE STATE OF TEXAS et al., | ) ) ) |
| Defendants. | ) ) |

## REPLY TO THE STATE OF TEXAS' MOTION OPPOSING PLAINTIFF'S MOTION TO ALTER OR AMEND A JUDGMENT AND TO REVISE AN ORDER

TO THE HONORABLE JUDGE OF NORTHERN DISTRICT OF TEXAS:

Plaintiff Conghua Yan ("Plaintiff", "Yan") files this Reply to Defendant the State of Texas's Response in Opposition to Plaintiff's Motion to Alter or Amend a Judgment and to Revise an Order. Notably, Defendant the State of Texas erred by filing its pleading under the title 'Motion Opposing Plaintiff's Motion' (ECF No. 69).

Defendant the State of Texas admitted that a Rule 59(e) motion is "a one-time effort to allow a district court to correct its own errors and avoid unnecessary appeals." *Banister v. Davis*, 590 U.S. 504, 508, 516 (2020). See ECF No. 69 at 2. Construed liberally, Plaintiff correctly argues that his motion addresses "a need to correct a manifest error of law or fact." *Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 597 (5th Cir. 2017).

### A. Procedure History.

In this suit, Defendant the State of Texas and Defendant Lori DeAngelis are separate parties sued under distinct claims. The Defendant State of Texas is sued on a *§ 1983* claim based on state actions Defendant Lori DeAngelis took in her official capacity as a former associate judge in the 325th associate judge's court. Additionally, Defendant Lori DeAngelis herself is sued under *§ 1983* in her individual capacity and under RICO as an alleged co-conspirator. Defendant The State of

Texas is represented by counsel from the Texas Office of the Attorney General, whereas Defendant Lori DeAngelis is represented by the Tarrant County District Attorney's Office.

Defendant the State of Texas filed Moton to Dismiss on November 6, 2024, (ECF No. 16), fully briefed on December 6, 2024.

7 days later, Defendant Lori DeAngelis separately filed Moton to Dismiss on December 13, 2024, (ECF No. 28), fully briefed on January 13, 2025.

After thoroughly reading Defendant the State of Texas's response, Plaintiff argues that Defendant the State of Texas's failed to rebut Plaintiff's reasoning; In the fact, it affirms Plaintiff's position.

### B. Defendant's response consented that a manifest error of law is a recognized ground for relief under Rule 59(e).

1. Defendant the State of Texas's response, ECF No. 69 at 2, acknowledged that one of "the recognized grounds for relief under Rule 59(e): … the need to correct a manifest error of law or fac. *Alexander*, 867 F.3d at 597."

2. Plaintiff timely preserved his sovereign immunity argument in the filing of objection to the FCR. Therefore, Plaintiff does not need to readdress the State of Texas's sovereign immunity arguments, because a Rule 59(e) motion is not a vehicle for rearguing legal theories. See Defendant's own citation to *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004).

3. It is well established by the Supreme Cour that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory. … courts have uniformly recognized that its purpose is "**to protect the integrity of the judicial process**," … judicial estoppel "protect[s] the **essential integrity** of the judicial process"; … (judicial estoppel prevents parties from "playing `fast and loose with the courts'" … (judicial estoppel forbids use of "intentional self-contradiction . . . as a means of obtaining unfair advantage")" *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001).

4. Knowing that Plaintiff properly preserved the argument concerning sovereign immunity in the objection to the FCR, Defendant the State of Texas erred by employing fast-and-loose

tactics, which constitute judicial estoppel. Defendant the State of Texas adopted a judicially estopped position by asserting two contradictory positions: first, by arguing that "the motion is not a vehicle for rearguing evidence, legal theories, or presenting issues that could have been raised earlier" (at page 2); then later by alleging that "Plaintiff does not address [reargue] the State of Texas's sovereign immunity [in the Rule 59(e) motion.]"

5. Additionally, Defendant the State of Texas admitted that Plaintiff made "these factual allegations" (at page 4) concerning associate judge Lori DeAngelis' official capacity being a "state statutory associate judge, not a state-elected judge," but their response erred by concluding that they are "immaterial to the Court's legal analysis."

6. Contradictorily, Lori DeAngelis' official capacity is the most material fact affecting the controlling issue of judicial immunity, because Federal common law judicial immunities are only for "Judges of courts of record of **superior or general jurisdiction**" *Bradley v. Fisher*, 80 U.S. 335, 336 (1871); *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

7. *Bradley* at 352, expressly stated that a probate court judge (statutory judge) who possess limited authority can "afford **no protection** to him in the exercise of the usurped authority." Therefore, Plaintiff's Rule 59(e) motion correctly argued that it is a manifest error of law to apply blanket judicial immunity based on the erroneous fact that "Defendant Lori DeAngelis is a state-elected judge," disregarding the fact that Defendant Lori DeAngelis was alleged for the "exercise of the usurped authority."

8. Lastly, Defendant the State of Texas admitted that Plaintiff had "alleged lack of a hearing or pleading in the [associate judge's] court," but erred by conclusorily stating that this is *beyond* the jurisdiction of this Court. Federal courts have long had jurisdiction over *§ 1983* claims against state actors who, under color of law, deprive individuals of Procedural Due Process under the Fourteenth Amendment—*regardless of the underlying scheme*. *§ 1983* originated as § 1 of the Civil Rights Act of 1871—better known as the Ku Klux Klan Act. Its language is clear and unambiguous: Congress has never exempted state judicial-branch actors under *§ 1983* civil-rights claims for their unlawful official act of deprivation individuals of Procedural Due Process. In fact, before the period at the end of the original statutory language, Congress expressly inserted the following clarification in 1996 through Pub. L. 104–317: ", except that in any action brought against a judicial officer for an act or

   omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." This amendment reinforces Congress's intent that judicial officers acting in a judicial capacity are not exempt from *§ 1983* claims, but clarifies that declaratory relief must be sought before injunctive relief can be granted.

9. Supreme Court's controlling precedent ruled that, "[f]ederal courts, it was early and famously said, have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." …. Jurisdiction existing, this Court has cautioned, a federal court's "**obligation**" to hear and decide a case is "virtually unflagging." … Parallel state-court proceedings **do not** detract from that obligation." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). After *Sprint*, the Circuit Courts shifted its tone, stating that "[Younger] [a]bstention, however, has become disfavored in recent Supreme Court decisions." *Walker v. City of Calhoun*, 901 F.3d 1245, 1254 (11th Cir. 2018).

10. Obligation is not waivable. Americans are shocked to the conscience to learn that the Defendant, the State of Texas, takes an unconstitutional position—contradicting the U.S. Supreme Court—by arguing that the federal Ku Klux Klan Act does not confer jurisdiction upon the federal courts when a state actor exercise usurped authority, merely because the act occurred during state statutory proceedings.

11. After all, Defendant the State of Texas addressed the *§ 1983* claim only as it pertains to representing associate judge Lori DeAngelis in her *official capacity*. It did not represent Defendant Lori DeAngelis with respect to the *§ 1983* claim against her in her *individual capacity*, nor did it address the RICO claim in which she is sued individually as a co-conspirator.

12. As of today, the Office of the Attorney General represents the Defendant, the State of Texas. It is evident that the Tarrant County District Attorney's Office has appeared on behalf of Defendant Lori DeAngelis in connection with the *§ 1983* claim brought against her in her individual capacity, as well as the RICO claim in which she is named individually as a co-conspirator. Plaintiff has argued that attorneys from the Office of the Attorney General, who do not represent DeAngelis on these specific claims, lack standing to argue them.

13. Judicial immunity is an affirmative defense applicable only to claims for monetary relief against Defendant DeAngelis in her individual capacity—a capacity in which the Office of the Attorney General does not represent her. Plaintiff has not sued the State of Texas under either the *§ 1983* or RICO claims in DeAngelis's individual capacity. The Tarrant County District Attorney's Office filed a separate motion seven days later to address these issues.

14. Additionally, the Fifth Circuit ruled, the district court had jurisdiction to hear federal claims, because they were "independent claims," as long as they do not seek the invalidity of the state-court ruling. *Truong v. Bank of Am., N.A.*, 717 F.3d. 377, 382 (5th Cir. 2013) (quoting *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995)). *Nesses* reasoning is well adopted amongst other Federal Circuits. See also *Great Western Mining & Mineral Co. v. Fox Rothschild LLP* 615 F. 3d 159 (3rd Circuit, 2010); *Dorce v. City of New York* 2 F. 4th 82 (2nd Cir. 2021); *Farris v. Burton*, No. 16-3272 (10th Cir. 2017); *Hadzi-Tanovic v. Johnson* 62 F. 4th 394 (11th Cir. 2014).

15. In 2024, the 7th Circuit, again, "noting without any analysis that [federal restrain doctrine] "does not bar a federal suit that seeks damages for a fraud that resulted in a [state] judgment adverse" to the federal plaintiff. *Id.,* citing *Nesses v. Shepard,* 68 F.3d 1003, 1004 (7th Cir. 1995), and cases cited in *Truong v. Bank of America, N.A.,* 717 F.3d 377, 383-84 (5th Cir. 2013)." (citing *Nesses* and Fifth's *Truong*).

16. Plaintiff well pleaded *Nesse* reasoning issue in his objection to FCR and 59(e) motion. This is a controlling legal issue that this Court must address before rendering a dismissal.

## Prayer for Relief

17. Based on the foregoing, Plaintiff prays this Court deny Defendant's response and grant the following relief:

    A. Revoke and/or vacate the March 6, 2025, judgment [ECF. No. 67].
    B. Revoke and/or vacate the March 6, 2025, order [ECF. No. 66].

Respectfully submitted,

/s/ Conghua Yan

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]

## **CERTIFICATE OF SERVICE**

I, Conghua Yan, hereby certify that I have served the forgoing document on all counsels and/or pro se parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2) On (April 18, 2025).

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]
